Norma FERGUSON, Appellant,

v.

Larry James FERGUSON as Independent Executor of The Estate of L.J. Ferguson, Jr., Deceased, Appellee.

No. 2–01–388–CV.

Court of Appeals of Texas, Fort Worth.

April 24, 2003.

Rehearings Overruled May 22 and July 3, 2003.

Moseley Martens, LLP, John L. Freeman, Dallas, for Appellant.

Ben Capelle, Dallas, for Appellee.

Panel A: CAYCE, C.J.; DAY and GARDNER, JJ. CAYCE, C.J. concurs without opinion.

## OPINION

ANNE GARDNER, Justice.

This appeal is from a declaratory judgment regarding a surviving widow's ownership rights, as well as her constitutional and statutory homestead interest, in the marital home devised to her by her deceased husband's will. We reverse and render in part, and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Norma Ferguson married L.J. Ferguson, Jr. on February 12, 1993. L.J. Ferguson, Jr. died on December 21, 1998. By his will, L.J. devised Norma the marital home, which was his separate property, located at 5605 Lowrie Road, Colleyville, Tarrant County, Texas. Norma had resided in the Colleyville home from the time she married L.J. until his death, and has continued to occupy the home and to pay taxes on and maintain the property until the present. He devised several other tracts of land and mineral interests, along with his residuary estate, to his children by former marriages.

Larry James Ferguson, L.J.'s son by a prior marriage, as independent executor of L.J.'s estate, filed an inventory, appraisement, and list of claims with the probate court on June 11, 1999, listing tracts of land in Oklahoma and Arkansas and mineral interests, as well as the Colleyville property, cash, and investments, as separate property of the deceased. On July 7, 1999, Norma filed a complaint against the inventory, claiming that it should have characterized certain cash and investments, including mutual fund dividends of $196,108, timber sale proceeds of at least $300,000, and household belongings valued at $7,000, as community, rather than separate, property.

On May 9, 2000, Norma filed a demand for an accounting. On June 28, 2000, the executor filed a first amended inventory, appraisement, and list of claims, still listing the mineral interests and the Colleyville property under the heading of separate real property, and recharacterizing only a small portion of the cash and investments as community property. The house was valued at $117,200; the total value of the estate listed on the amended inventory was $781,782.

On July 25, 2000, the parties appeared for trial on Norma's complaint against the inventory regarding the disputed characterization of the items of cash and investments as the decedent's separate property. After several hours of negotiations, the parties reached a settlement agreement, the terms of which were dictated orally into the record. On October 25, 2000, the probate court signed an agreed judgment.

Reciting that the parties announced they had "reached an agreement for the resolution of Norma Ferguson's Complaint and her claims against the estate," the agreed judgment stated that "all matters of fact and issues in controversy were submitted to the Court for its ruling." The agreed judgment awarded Norma the sum of $167,944.14 from the estate, ordered that her complaint be dismissed with prejudice, and provided in the fifth paragraph that Norma Ferguson "shall have no further claim" against the Estate of L.J. Ferguson, Jr. or the property of the Estate of L.J. Ferguson, Jr.

On January 30, 2001, after the agreed judgment was signed, the executor's attorney sent a letter to Norma's attorney, making demand on Norma, for the first time, that she vacate the residence for sale and distribution of the proceeds to the remaining heirs. The letter claimed that, pursuant to the terms of the settlement and agreed judgment, Norma had relinquished all claims against the Colleyville property devised to her, including the right of occupancy. The executor also took the position in the letter that, by filing her complaint against the inventory, Norma had elected to challenge the will and, pursuant to the *"in terrorem"* clause of the will, had relinquished the devise to her of the Colleyville property.[1]

On March 6, 2001, the executor filed a Petition for Declaratory Relief and For Possession of Real Property, claiming that, by the terms of the agreed judgment, or alternatively, by her contest of the inventory, Norma had no valid claim to the Colleyville property, including any right of occupancy, and he sought that she be ordered to vacate and surrender control of the property. Norma counterclaimed, asking the court to declare that the house belonged to her pursuant to the devise by the will or, alternatively, for reformation based on mutual mistake, because the agreed judgment was not intended to include the Colleyville property. Norma further asserted that, as the surviving widow of the decedent, she be declared to have a life estate pursuant to Article XVI, section 52 of the Texas Constitution and sections 282 through 285 of the Texas Probate Code, providing for a homestead right to a surviving spouse.

In a trial to the court, Norma and the executor, as well as their respective attorneys and expert witnesses who had been present at the prior proceedings, testified as to the negotiations and their conflicting beliefs as to what was intended by the agreed judgment. The probate court en-

---

1. The term *"in terrorem,"* in the context of wills, refers to a devise or bequest given on condition that the beneficiary will not dispute the validity or disposition plan of the will. *In re Estate of Hamill,* 866 S.W.2d 339, 346 (Tex.App.-Amarillo 1993, no writ).

tered a declaratory judgment that the executor was entitled to recover title and possession of the Colleyville property, ordered Norma to vacate the property, and awarded the executor his reasonable attorney's fees.

By its findings of fact and conclusions of law, the court found that the terms of the agreed judgment were not ambiguous, that those terms included the Colleyville property, that by the agreed judgment Norma exchanged any interest she had to the property of the estate for the sum paid and received of $167,944.14, and that, by her approval of the agreed judgment and her testimony that it reflected her agreement, she waived her homestead rights. The trial court further concluded that the estate was entitled to immediate possession and title to the Colleyville property.

## APPLICATION OF LAW TO FACTS

### I. Interpretation of Agreed Judgment

In her first two issues, Norma challenges the trial court's findings and conclusions that, by the terms of the agreed judgment, the estate was entitled to possession and title to the Colleyville property and that she waived her homestead interest in that property. Norma contends that the trial court erred in its interpretation of the agreed judgment as relinquishing her vested ownership right to the property as devisee under the will, and complains that there is legally and factually insufficient evidence to support the finding of waiver of the homestead interest. Because the issues of ownership and the homestead right of a surviving spouse present separate questions governed by different legal principles, we address each issue separately.

### A. Ownership of the Colleyville Property

Norma first contends that the agreed judgment unambiguously resolved only the claims she had made in her complaint against the inventory to the effect that certain cash and investments should be characterized as community property, because those were the only matters in controversy in the proceeding culminating in the agreed judgment. Norma also argues that the agreed judgment's reference to "no further claims against the estate or property of the estate" meant simply that she would make no additional claim against the estate as to any other property that she did not already have. Because the will had devised the Colleyville property to her, she argues, she already owned it, and needed to make no "claim" for that property. Alternatively, Norma contends that the agreed judgment is unclear and ambiguous, in that the term "claim" as used in the first paragraph of the document refers only to the claims she was making by her complaint against the inventory, and it is unclear whether the same term used in the fifth paragraph of the agreed judgment applies only to those claims or to any other claim that might be made regarding any property of the estate.

In response, the executor argues that the agreed judgment is not ambiguous and that Norma's agreement that she would have "no further claim" against the property of the estate included the Colleyville property because the agreed judgment referenced "real" as well as personal property described in the first amended inventory, which expressly listed the Colleyville property. The executor further responds that it is immaterial what claims Norma made in her complaint against the inventory because the agreed judgment is not limited to the claims in controversy at that time, but extends to "any further claim" against the estate or property of the estate and would, therefore, include any "claim" she

might have to ownership of the Colleyville property.

An agreed judgment should be construed in the same manner as a contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000). Whether a contract is ambiguous is a question of law for the court. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). Our primary goal in construing a written contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex.1998); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Nat'l Union*, 907 S.W.2d at 520; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

An ambiguity does not arise simply because parties advance differing interpretations of the terms of a contract. *Columbia Gas*, 940 S.W.2d at 589; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727 (Tex.1981). For an ambiguity to exist, the language of the contract must remain uncertain or subject to two or more reasonable interpretations after applying the pertinent rules of construction.

In determining the parties' agreement, we are to examine all parts of the contract, and the circumstances surrounding the formulation of the contract. *Columbia Gas*, 940 S.W.2d at 589 (noting that court is to examine all parts of con-

tract and circumstances surrounding its formulation); *Nat'l Union*, 907 S.W.2d at 520 (stating whether contract is ambiguous is determined by looking at contract as a whole in light of all circumstances present when contract was entered); *Forbau*, 876 S.W.2d at 133. Only where a contract is determined to be ambiguous after application of the rules of construction, may the courts consider parol evidence of the parties' interpretations. *Nat'l Union*, 907 S.W.2d at 520; *Sun Oil Co.*, 626 S.W.2d at 732.

We begin with an examination of the language of the agreed judgment. *See Columbia Gas*, 940 S.W.2d at 588. The fifth paragraph of the agreed judgment states:

> Norma Ferguson "shall have no further claim ... against the Estate of L.J. Ferguson, Jr. or the property of the Estate of L.J. Ferguson, Jr. discovered and disclosed to her prior to July 25, 2000. The property of the estate which is the subject of this order is as follows: *1.The real property and personal property described on the First Amended Inventory, Appraisement and List of Claims filed in this cause; ...*" (Emphasis added)

That paragraph of the agreed judgment then lists "the subject of this order," as (1) the "real property and personal property" described in the first amended inventory, and goes on to specifically name each account and certificate of deposit identified in the first amended inventory, but not the Colleyville property or the mineral interests.[2]

---

2. The fifth paragraph of the agreed judgment provides, in full:

IT IS ORDERED that Norma Ferguson shall have no further claim, including but not limited to a claim for attorneys fees, against the Estate of L.J. Ferguson, Jr. or the property of the Estate of L.J. Ferguson,

Jr. discovered and disclosed to her prior to July 25, 2000. The property of the estate which is the subject of this order is as follows: 1. The real property and personal property described on the First Amended Inventory, Appraisement and List of Claims filed in this cause; 2. Merrill Lynch Ac-

The executor's position that Norma exchanged any rights to ownership of the Colleyville property for payment of the sum of $167,944.14 has superficial appeal because, while the agreed judgment, itself, does not name the Colleyville property, it references "real" as well as personal property described in the first amended inventory, which, in turn, lists the Colleyville property. Our inquiry is not at an end, however. The executor's proposed interpretation focuses on only one portion of the fifth paragraph of the agreed judgment.

■ In interpreting a contract, we must consider all of the provisions with reference to the entire contract; no single provision will be controlling. *Coker,* 650 S.W.2d at 393; *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 132 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd). As noted by Norma, the first paragraph of the agreed judgment specifically recites only that the parties had reached an "agreement for the resolution of Norma Ferguson's Complaint and her

claims against the estate." Norma's complaint and existing claims against the estate related only to the cash and investments. The first paragraph also concludes with the statement that "all matters of fact and issues in controversy" were submitted to the court for its ruling. The Colleyville property ownership was never a "matter in controversy." Additionally, the fifth paragraph concludes that she shall have "no further claim" against the estate, and Norma's argument seems reasonable that the term "no further claim" in the context of the agreement as a whole, means only "no further claim" for the items in controversy in the proceeding, absent broad language indicating an intent to release any other claim of any nature, whatsoever.[3]

Most persuasively, as Norma further points out, she did not have to make a "claim" for the Colleyville property because it was already devised to her by the will. Section 37 of the probate code provides that "when a person dies, leaving a will, all of his estate devised or bequeathed by such will ... shall vest immediately in

count 593–30641; 3. Bank of Delight, Nevada County Branch, Certificate of Deposit # 1432660320; 4. Bank of Blevins Certificate of Deposit # 4227; 5. Bank of Prescott Certificate of Deposit # 10737; 6. Chase Bank of Texas Certificate of Deposit # 32426581020; 7. Chase Bank of Texas Certificate of Deposit # 3240007444; 8. Chase Bank of Texas checking account held in the name of L.J. Ferguson, Jr. with a balance of approximately $22,000.00 on the date of his death; and 8.[sic] Chase Bank of Texas ·Individual Retirement Account held in the name of L.J. Ferguson with a balance of approximately $19,400.00 on the date of his death; 9. 1712 shares of General Electric common stock held in the name of L.J. Ferguson, Jr. This order shall not apply to property or income which a) was part of the community property estate of L.J. Ferguson, Jr. and Norma Ferguson and b) is discovered by either party after July 25, 2000.

3. Although releases often cover only claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future. *Compare Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 698 (Tex.2000) (holding broad release of claims attributable to professional services extended to malpractice claims even though recitals primarily addressed unpaid fees), and *Mem'l Med. Ctr. of E. Tex.v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997) (holding broad-form mutual release of all claims "related to" relationship of doctor with hospital in proceeding for corrective action for tampering with documents sufficient to release defendant's claim for exposure to toxic substance), with *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 937–38 (Tex.1991) (holding release of bank from any and all claims or causes of action attributable to "above described loan transaction" not applicable to claims arising out of separate transaction based on separate line of credit).

the devisees and legatees of such estate," subject only to payment of the testator's debts. TEX. PROB.CODE ANN. § 37 (Vernon Supp.2003); *Kelley v. Marlin*, 714 S.W.2d 303, 305 (Tex.1986) (op. on reh'g). This is because "there is never a time when title is not vested in someone." *Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 584–85 (Tex.1993) (op. on reh'g).

 The executor argues that Norma would nevertheless still be required to make a claim for ownership because he has not yet executed a deed to her of legal title. We disagree. After a will is admitted to probate it becomes a "muniment of title until set aside in some lawful manner." *White v. White*, 142 Tex. 499, 179 S.W.2d 503, 505 (1944). A right to the property devised is conferred on the devisee as effectively as if the transfer had been made in the form of a deed by the testator. *Youree v. Pires*, 5 S.W.2d 178, 179 (Tex.Civ.App.-Waco 1928, writ ref'd). The executor has never challenged the devise of the property by the will to Norma.

Because title to the Colleyville property vested in Norma immediately upon L.J.'s death, Norma cannot reasonably be viewed as having a "claim" against the estate or against property of the estate for the Colleyville property because she already holds equitable title to it, with the estate merely holding legal title as trustee. TEX. PROB. CODE ANN. § 37; *Bailey*, 862 S.W.2d at 584; *Kelley*, 714 S.W.2d at 305; *Gorham v. Gates ex rel. Estate of Badouh*, 82 S.W.3d 359, 365 (Tex.App.-Austin 2002, pet. denied); *Longaker v. Evans*, 32 S.W.3d 725, 737 (Tex.App.-San Antonio 2000, pet. withdrawn) (en banc); *Am. Fin. & Inv. Co. v. Herrera*, 20 S.W.3d 829, 832–33 (Tex.App.-El Paso 2000, no pet.). Indeed, a "claim" for ownership of the Colleyville property is being made by the executor on behalf of the estate, not Norma.

We conclude that the agreed judgment is capable of being given only one reasonable, definite, and certain legal meaning, that Norma's ownership of the Colleyville property was not intended by the parties to be given up by her in the settlement as consideration for the payment to her of the sum of $167, 944.14, as a matter of law. Our conclusion is reinforced by the evidence of circumstances surrounding the settlement and agreed judgment, including Norma's testimony, confirmed by that of the executor, that she had lived in the Colleyville house since her marriage to the decedent, that she continued to live in the house thereafter, that she—rather than the estate—maintained it and paid the taxes on the property after the decedent's death, and that no demand was ever made by the estate for possession of the house until after the agreed judgment. Moreover, as noted, neither the devise of the property to Norma by the will nor her ownership was ever a matter "in controversy" in the proceedings or the negotiations leading up to execution of the settlement.

Malcom E. Walker, Jr., CPA for the estate, testified he prepared estate tax returns for the estate, including an amended return filed after the agreed judgment, and was asked to appear as an expert witness for the estate in the prior proceedings. The returns he prepared, including the amended return filed after the agreed judgment, listed the Colleyville property as passing to Norma and belonging to her. The amended return, filed after the agreed judgment, was signed by the executor. The amended return took *both* the Colleyville property and the amount paid in settlement as deductions.

Walker testified that he had no documentation or other information that the property changed hands at the time of the agreement. Although it was the execu-

tor's opinion that it did, Walker deals with "fact." He saw no documentation to indicate that there was a change of title. He could use a written contract as documentation but stated "I don't have it." He was given a list of actual things that transpired that he could go by for the amended return, and was supplied no information that the house was being given up by Norma as part of the agreed judgment.

Jason Wiley, an attorney and CPA, testified he had been hired by Norma as an expert witness for and also attended the prior proceedings. The dispute, he said, was over whether certain bank accounts and stock were community property. He had studied voluminous documents and was ready to testify that the estate could not carry its burden of tracing those assets as separate property. He was involved in and present during all of the negotiations as a sounding board. The negotiations concerned who was going to get what stock and accounts. He testified that there was no discussion about the Colleyville property. The issue was "never looked at." The whole suit, Wiley said, concerned the bank accounts and stock, and all of the numbers came from the evaluation of those assets. The amount paid to Norma specifically came from and was tied directly to the accounts and stock.

Don Ferry, an attorney and CPA who represented Norma in the prior proceedings, testified that the dispute centered around the characterization of accounts and stock as community property in the prior proceedings. The negotiations were primarily "number crunching" between Walker and Wiley to settle that dispute. The house was "never, never" an issue in the litigation. There was "[a]bsolutely not" any discussion about the house that day. It was already Norma's. Consideration for the payment to her was that she

would make no further claim as to the matters in controversy.

As to the reference in the agreed judgment to "real property," Ferry pointed out that the stocks and accounts were each specifically listed in the judgment whereas the Colleyville property was not. The "homestead" was not in dispute; that was why it was not listed. In response to opposing counsel, he testified: "And you even told me, 'she is already getting the house; what more does she want?'", "There was—there was no disputed claim about the homestead at all by anyone, by either the estate or by Norma." The attorney for the estate did not testify, except as to attorney's fees. The executor testified, but even he did not testify that there was any discussion during the negotiations about the Colleyville property being included in the settlement and agreed judgment.

We hold that the trial court erred in concluding, under the unambiguous terms of the agreed judgment, that the estate is entitled to ownership and title to the Colleyville property. We sustain Norma's first issue as to ownership and title of the Colleyville property.

### B. The Homestead Interest

By her first two issues, Norma challenges the legal and factual sufficiency of evidence to support the trial court's finding that, by her approval of the agreed judgment and her testimony that the agreed judgment reflected the agreement of the parties, she waived her homestead right in the Colleyville property.

A surviving spouse retains the right to use and occupy the homestead so long as he or she elects to do so. TEX. CONST. art. XVI, § 52; TEX. PROB.CODE ANN. § 283 (Vernon 1980). This right continues as long as the surviving spouse uses or occupies the property, or until he or she

abandons that right. *Moore v. Moore*, 89 Tex. 29, 33 S.W. 217, 218 (1895); *Copeland v. Tarrant Appraisal Dist.*, 906 S.W.2d 148, 151 (Tex.App.-Fort Worth 1995, writ denied). A surviving spouse may remain on the homestead premises, even though the homestead was the separate property of the deceased spouse. *Copeland*, 906 S.W.2d at 151. Furthermore, the surviving spouse's right exists even if the decedent has willed the property to another. *Copeland*, 906 S.W.2d at 151.

■ The homestead right may be waived. *Williams v. Williams*, 569 S.W.2d 867, 870 (Tex.1978); *Hunter v. Clark*, 687 S.W.2d 811, 815 (Tex.App.-San Antonio 1985, no writ). Waiver is defined as an intentional relinquishment of a known right. *United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). The key element to waiver is intent. *ASI Technologies, Inc. v. Johnson Equip. Co.*, 75 S.W.3d 545, 548 (Tex.App.-San Antonio 2002, pet. denied) (quoting *Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc.*, 995 S.W.2d 192, 195 (Tex.App.-San Antonio 1999, pet. denied)). The intent to waive may be either expressly made or inferred from intentional conduct that is inconsistent with an intent to claim the right. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

■ Once it attaches, the homestead right is presumed to continue, and one asserting waiver must plead it and prove it by affirmative evidence. *See Estate of Casida*, 13 S.W.3d 519, 521 (Tex. App.-Beaumont 2000, no pet.) (holding party asserting abandonment has burden of proof). That burden is a "heavy" one. *Id.* To establish waiver, there must be proof of "clear, unequivocal, and decisive acts" showing an intent to waive. *Langley v. Jernigan*, 76 S.W.3d 752, 756 (Tex.App.-Waco 2002, pet. filed).

In light of our disposition of Norma's first issue that she retains ownership of the property as the devisee under the will of the decedent, we also necessarily sustain her first two issues to the extent that she challenges the trial court's finding that she waived her constitutional and statutory homestead right in the Colleyville property. Even if Norma did not retain legal ownership of the Colleyville property, however, she would still retain her constitutional and statutory homestead right to use and occupy the property because there is no evidence that she intended to waive it.

## II. *In Terrorem* Clause

■ In her fourth issue, Norma challenges the trial court's conclusion of law that Larry James Ferguson, by filing the petition for a declaratory judgment, did not violate the *in terrorem* clause of L.J.'s will. Conclusions of law may not be challenged for factual sufficiency, but may be reviewed as a matter of law to determine their correctness based on the facts. *Forbis v. Trinity Universal Ins. Co.*, 833 S.W.2d 316, 319 (Tex.App.-Fort Worth 1992, writ dism'd).

L.J.'s will contained an *in terrorem* clause revoking a devise "to any person claiming to be my heirs at law, or any devisees or legatees under this will," who sought to attack, oppose, or set aside any devise made under the will or to change the testamentary plan. Larry contended that Norma violated this provision by filing her complaint against the inventory.[4]

---

**4.** Larry asserted that Norma had invoked the *in terrorem* clause of the will by filing the complaint against the inventory, appraise-

ment, and list of claims. As a result, Larry contended that Norma had relinquished all

Norma claimed that Larry violated it by filing the declaratory judgment action and seeking to evict her from the house and return the house to the estate. The trial court concluded that neither party violated the *in terrorem* clause.

The purpose of an *in terrorem* or "no-contest" clause is to dissuade devisees of a will from challenging the bequests made therein. *Veltmann v. Damon,* 696 S.W.2d 241, 246 (Tex.App.-San Antonio), *aff'd in part and rev'd on other grounds in part,* 701 S.W.2d 247 (Tex.1985). If the purpose of a suit involving a will is to thwart the testator's intention, the forfeiture clause should be effectuated. *Id.; Hodge v. Ellis,* 268 S.W.2d 275, 287 (Tex.Civ.App.-Fort Worth 1954), *aff'd in part and rev'd on other grounds in part,* 154 Tex. 341, 277 S.W.2d 900 (1955).

■■■ In determining whether either party violated the *in terrorem* clause, we are guided by the rules of interpretation of such clauses that they are to be strictly construed and that forfeiture is to be avoided if possible. *Sheffield v. Scott,* 662 S.W.2d 674, 676 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). A breach of the clause will be found only where the acts of a beneficiary or devisee clearly fall within the express terms. *Gunter v. Pogue,* 672 S.W.2d 840, 842 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.).

The only devise to Norma under the will was the Colleyville property. Norma's complaint did not seek to change that devise or the testamentary plan of the decedent. Instead, her complaint was against the *inventory* to obtain and protect her community property interest in cash and investments that the estate had allegedly improperly characterized as separate property. Thus, the trial court properly con-

claims to the house, including the right of

cluded that her complaint did not violate the *in terrorem* clause.

■■■ Larry, the son of the decedent by a previous marriage, was an heir and also one of a number of devisees named in the will, but we disagree with Norma's contention that he violated the *in terrorem* clause by filing the petition for declaratory judgment asking the probate court to determine that Norma retained no interest in the Colleyville property devised to her in the will. The *in terorrem* clause only applies to persons who claim to be heirs, devisees, or legatees. Larry did not file the petition in his individual capacity as an heir or devisee, but in his official capacity as executor of the estate to recover possession and title of the property so that it could be sold and distributed as a part of the estate.

Moreover, Larry sought an interpretation of the terms of an agreed judgment reflecting a settlement agreement between Norma and the estate, rather than seeking to contest the validity of the will or to attack, modify, or void a provision of the will. We decline to interpret the clause as extending to a declaratory judgment proceeding brought by a representative of an estate in his official capacity to interpret a settlement agreement and agreed judgment entered into in that capacity on behalf of the estate, even though he may also be an heir or devisee. *See, e.g., Conte v. Conte,* 56 S.W.3d 830, 832 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that beneficiary, acting in role as co-trustee, did not violate *in terrorem* clause by bringing action to remove other co-trustee). We overrule Norma's fourth point.

### III. Attorney's Fees

■■■ The executor sought attorney's fees pursuant to the Uniform Declaratory

occupancy.

Judgment Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The trial court awarded Larry attorney's fees for services rendered through trial, awarded additional amounts for appeal, and denied recovery of attorneys' fees to Norma. By her third issue, Norma challenges the award of attorneys' fees to the executor as supported by legally and factually insufficient evidence. She also challenges the failure of the trial court's award to the executor for appellate attorney's fees to make such fees conditional upon success in this court. She further prays that, upon vacating and denying relief awarded to the executor, she be awarded her attorney's fees as proved at trial or for reversal and remand for further proceedings consistent with this court's ruling. In her fifth issue, Norma contends that the trial court erred by awarding the executor recovery of costs.[5]

Because we have determined that the judgment of the trial court must be reversed and rendered in favor of Norma, we also hold that the judgment of the trial court awarding attorney's fees and costs to the executor and in refusing to award attorney's fees and costs to Norma should be reversed and remanded for further proceedings.

## CONCLUSION

We reverse the trial court's judgment to the extent that it declares that the estate of L.J. Ferguson, Jr. is entitled to ownership of the property located at 5605 Lowrie Road, Colleyville, Tarrant County, Texas. We reverse the trial court's judgment

to the extent that it divests Norma Ferguson of her homestead right in the Colleyville property. We render judgment in favor of Appellant Norma Ferguson that she is entitled to ownership of the real property located at 5605 Lowrie Road, Colleyville, Tarrant County Texas, as well as possession and occupancy of that property pursuant to Article XVI, Section 52 of the Texas Constitution. We reverse the judgment of the trial court awarding attorney's fees and costs to Larry James Ferguson as executor of the estate of L.J. Ferguson, Jr., and refusing to award attorney's fees to Norma Ferguson, and remand those issues to the trial court for further proceedings.[6]

---

5. In her fifth issue, Norma also asserts that the evidence does not support the trial court's findings of fact and conclusions of law that support the final judgment, that the trial court erred by omitting and refusing to make amended or additional findings of fact and conclusions of law requested by Norma, and that the trial court erred by denying Norma

relief on her counterclaim. Because of our resolution of Norma's other issues, it is unnecessary to address these claims.

6. The Final Judgment also awarded the executor $1,000 in mediation fees. Norma does not challenge that award on appeal; therefore, it is not before us.