Opinion issued August 3, 2006












In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00992-CV




PAUL PIERO DI PORTANOVA; ANTONELLA APUZZO DI
PORTANOVA; MAX BUTLER, ROBERT HUX, AND ROBERT A.
HIGLEY, CO-TRUSTEES OF THE H.R. CULLEN AND LILLIE C.
CULLEN NEW LOUISIANA TRUST FOR THE BENEFIT OF UGO DI
PORTANOVA, Appellants

V.

RICHARD MONROE, GUARDIAN OF THE ESTATE OF UGO DI
PORTANOVA, AN INCAPACITATED PERSON, Appellee




On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 68,525-401




O P I N I O N
          In this appeal, we consider whether a declaratory judgment is appropriate to
resolve a dispute between a beneficiary and a trustee over how the trustee should
exercise the discretion given to him in the trust instrument. In accordance with our
holding that no justiciable controversy was presented to the trial court on that issue,
we vacate that portion of the judgment of the trial court and dismiss that portion of
the case. We affirm, however, the portion of the trial court’s judgment declaring that
appellee, Richard Monroe, guardian of the Estate of Ugo DiPortanova, an
Incapacitated Person, did not violate in terrorem clauses of the wills of H.R. and
Lillie Cullen.
BACKGROUND
The Parties
          Ugo Di Portanova is the 68-year-old grandson of H.R. and Lillie Cullen. Ugo
is partially incapacitated and has lived with Annunziata and Umberto LaMatta since
1974. In 1998, Mrs. LaMatta was appointed as guardian of Ugo’s person. Richard
Monroe [“the Guardian”] is the guardian of Ugo’s estate.



          Paul Piero Di Portanova and Antonella Apuzzo Di Portanova [“the Di
Portanovas”] are Ugo’s half-brother and half-sister. They share the same
father—Paolo Di Portanova, but Ugo’s mother is Lillie Cullen Di Portanova, the
daughter of H.R. and Lillie Cullen, and the Di Portanovas’ mother is D’Alesandro
Filament, a woman from Naples, Italy.
          Max Butler, Robert Hux, and Robert A. Higley [“the Trustees”] are co-trustees
of the H.R. Cullen and Lillie C. Cullen New Louisiana Trust, a trust established by
the Cullens in their wills for the benefit of their grandson, Ugo.
The Cullens’ Wills and Codicils Create a Discretionary Trust
          H.R. and Lillie Cullens’ wills each contained a codicil that provided for the
creation of certain trusts to hold their Louisiana property, which, at the time,
consisted mostly of certain mineral interests. Ugo was the beneficiary of two such
trusts—one created under each will. In 1996, the trial court granted a judgment
merging the trusts, and the H.R. Cullen and Lillie C. Cullen New Louisiana Trust
(“the New Louisiana Trust”) was created. After the trusts were merged, all Louisiana
properties were sold and there are no assets in the New Louisiana Trust located in the
State of Louisiana. The New Louisiana Trust assets consist of cash, assets in
accounts at Legg Mason and Merrill Lynch, and an annuity. The current value of the
trust is approximately 9.5 million dollars.
          The codicils establishing the trusts provide in relevant part:
During the term of each such Trust, the income of such Trust Estate may
be accumulated and retained, in whole or in part, or the Trustee, from
time to time, may distribute to the person for whom such Trust was
created such amounts of such Trust Estate as, in the discretion of the
Trustee, are in the best interests of such person, taking into account
any income such person may have from other sources to the knowledge
of the Trustee and any other factors deemed relevant by the Trustee;
provided, however, that the income of such portion of the legitime of
any person as is held in one of the Louisiana Trusts shall be distributed
to, or for the benefit of, such person not less often than once a year. 
(Emphasis added).

          The codicils further provide that upon Ugo’s death, “the Trust Estate of such
Trust shall be distributed to such person’s heirs-at-law under the Louisiana statutes
of descent and distribution in effect at that time . . .”



The Guardian Files a Declaratory Judgment Action
          On September 20, 2003, the Guardian of Ugo’s estate filed an “Application to
Make Tax-Motivated Gifts for the Benefit of Annunziata LaMatta and Family,” in
which he sought to use over five million dollars from the New Louisiana Trust to
fund a new trust to be established for the benefit of Annunziata LaMatta and her
family. The Guardian also requested that the taxes on the proposed five-million-dollar gift be paid out of the New Louisiana Trust, for a total dispersal by the trust of
approximately 6.6 million dollars. If the proposed gift to LaMatta were approved,
approximately 2.9 million dollars would remain in the New Louisiana Trust.
          At the same time he filed the above-referenced application, the Guardian also
filed this declaratory judgment action. In the Guardian’s first amended original
petition for declaratory judgment, he requested a judgment declaring that:
the Wills and First Codicils of both H.R. and Lillie C. Cullen permit
and/or authorize the distribution of income and corpus from the H.R.
Cullen and Lillie C. Cullen New Louisiana Trust for Ugo Di Portanova
by the Co-Trustees to Petitioner, for funding purposes, to Annunziata
LaMatta or Umberto LaMatta for annual exclusion gifts, to a trust for
the LaMatta Family and to pay federal gift taxes due on such gifts.

The Motions for Summary Judgment and Rulings Thereon
          The Trustees filed a motion for Partial Summary Judgment, contending, among
other things, that there was no material fact question to be decided in the declaratory
judgment action because the trustees had already exercised their discretion and
decided not to fund the proposed LaMatta trust.



          The Di Portanovas filed two motions for summary judgment. In the first
motion, they contended that the Guardian had violated the in terrorem clauses of the
Cullens’ wills by filing his request for declaratory judgment.


 In the second motion,
the Di Portanovas contended that the terms of the trust would not support the
dispersal of trust funds to the proposed LaMatta Trust because such dispersal would
not be in Ugo’s best interest.
          The Guardian filed a motion for partial summary judgment, contending that his
action in filing the petition for declaratory judgment did not violate the in terrorem
clauses of the Cullens’ wills.
          On August 10, 2004, the trial court denied the motions for partial summary
judgment filed by the Di Portanovas and the Trustees and granted the motion for
partial summary judgment filed by the Guardian.
          The Guardian then moved for summary judgment, contending that the terms
of the trust would support the dispersal of trust funds to the proposed LaMatta Trust
because such a dispersal would be in Ugo’s best interest. The Guardian also asked
for entry of a final declaratory judgment in his favor.
The Final Judgment
          On November 23, 2004, the trial court signed a Final Declaratory Judgment,
in which the trial court declared that the Cullens’s wills and codicils authorized the
Trustees to make the proposed gifts to the LaMattas, including the payment of the
federal gift taxes owing thereon. The final judgment also declared that the Guardian
had not violated the in terrorem clauses by filing the petition for declaratory
judgment, participating in the proceedings, or filing the application to make tax-motivated gifts for the benefit of the LaMatta family.
PROPRIETY OF GRANTING DECLARATORY RELIEF
On Trustees’ Authority to Make Distributions in the Beneficiary’s Best Interest
          In their first issue on appeal, the Trustees argue that the trial court erred in
granting declaratory relief on the issue of whether they were authorized to make the
proposed distribution to the LaMattas. Specifically, the Trustees argue that the
Guardian’s request for a declaratory judgment was “nothing more than an improper
request for an advisory opinion.” The Guardian responds that controversies
concerning the meaning of wills and codicils are appropriately resolved by a
declaratory judgment action. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004
(Vernon 1997) (“A person interested under a deed, will, written contract or other
writings constituting a contract . . . may have determined any question of construction
or validity arising under the instrument . . . and obtain a declaration of rights, status,
or other legal relations thereunder.”).
          We agree that the construction of a trust or will may be the proper subject of
a declaratory action. However, a declaratory judgment is appropriate only if a
justiciable controversy exists as to the rights and status of the parties and the
controversy will be resolved by the declaration sought. Bonham State Bank v.
Beadle, 907 S.W.2d 465, 467 (Tex. 1995). “To constitute a justiciable controversy,
there must exist a real and substantial controversy involving a genuine conflict of
tangible interests and not merely a theoretical dispute.” Id. (quoting Bexar-Medina-Atascosa Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Assn.,
640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref’d n.r.e.) If a
justiciable controversy does not exist between the parties, a court must dismiss the
case for lack of jurisdiction. Lavely v. Heafner, 976 S.W.2d 896, 897 (Tex.
App.—Houston [14th Dist.] 1998, no pet.). “A declaratory judgment action does not
vest a court with the power to pass upon hypothetical or contingent situations, or to
determine questions not then essential to the decision of an actual controversy,
although such questions may in the future require adjudication.” Tex. Health Care
Info. Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 846 (Tex. App.—Austin
2002, pet. denied). If the district court lacks the power to effect a remedy that would
resolve the dispute at issue, the case does not present a justiciable issue. See State
Bar of Texas v. Gomez, 891 S.W.2d 243, 246 (Tex. 1994).
          In this case, the Guardian sought—and the trial court granted—a declaration
that
the Wills and First Codicils of both H.R. and Lillie C. Cullen permit
and/or authorize the distribution of income and corpus from the H.R.
Cullen and Lillie C. Cullen New Louisiana Trust for Ugo Di Portanova
by the Co-Trustees to Petitioner, for funding purposes, to Annunziata
LaMatta or Umberto LaMatta for annual exclusion gifts, to a trust for
the LaMatta Family and to pay federal gift taxes due on such gifts.
(Emphasis added).

          However, the wills provide that the Trustees may make distributions from the
trust estate only if the distribution, “in the discretion of the Trustee, [is] in the best
interests of [the beneficiary] (emphasis added).” Therefore, the trial court’s
declaration that the Trustees were authorized to fund the proposed LaMatta trust
decides the preliminary issue of whether the proposed disbursement to the LaMattas
would be in Ugo’s best interest. Put another way, the Trustees would not be
authorized to make the proposed disbursement to the LaMattas unless it was in Ugo’s
best interest to do so. The record in the case makes clear that the trial court, in fact,
considered and decided that the proposed disbursement was in Ugo’s best interest. 
The parties argued extensively and presented evidence to the trial court regarding
whether the proposed gift to the LaMattas was in Ugo’s best interest. Thus, the trial
court’s declaration that the trustees were authorized to make the proposed
disbursement to the LaMattas resolves in the affirmative the underlying issue of
whether the proposed disbursement would serve Ugo’s best interest.
          However, in this discretionary trust, the Trustees, not the court, are given the
power to determine the best interest of the beneficiary. Under a discretionary trust,
the beneficiary is entitled only to the income or principal that the trustee, in his
discretion, shall distribute to the beneficiary. See Kolpack v. Torres, 829 S.W.2d 913,
915 (Tex. App.—Corpus Christi 1992, writ denied) (citing G. Bogert, The Law of
Trusts and Trustees § 228 (2d ed. 1979)). The beneficiary of a discretionary trust
cannot compel the trustee to pay him or to apply for his use any part of the trust
property, nor can a creditor of the beneficiary reach any part of the trust property until
it is distributed to the beneficiary. Id. A court cannot substitute its discretion for that
of a trustee, and can interfere with the exercise of discretionary powers only in cases
of fraud, misconduct, or clear abuse of discretion. Beaty v. Bales, 677 S.W. 2d 750,
754 (Tex. App.—San Antonio 1984, writ ref’d n.r.e.); Coffee v. William Marsh Rice
Univ., 408 S.W.2d 269, 284 (Tex. Civ. App.—Houston 1966, writ ref’d n.r.e); see
also Brown v. Scherck, 393 S.W.2d 172, 184 (Tex. Civ. App.—Corpus Christi 1965,
no writ) (“It is undoubtedly the general rule that a court will not interfere with
trustees in the exercise of a discretionary power except where proper grounds are
plead and proved.”). 
A court of equity has no right to interfere with and control, in any case,
the exercise of a discretionary power, no matter in whom it may be
vested; a corporate body or individuals, the aldermen of a city, the
directors of a bank, a trustee, executor or guardian; and I add, that
meaning and principle of the rule, and the limitations to which it is
subject, are in all the cases to which it applies, exactly the same. The
meaning and principle of the rule are, that the court will not substitute
its own judgment for that of the party in whom the discretion is vested,
and thus assume to itself a power which the law had given to another[.]

City of Houston v. Houston Police Officers Ass’n, 715 S.W.2d 145, 147 (Tex.
App.—Houston [14th Dist.] 1986, no writ) (quoting Stone v. City of Wylie, 34 S.W.2d
842, 843-44 (Tex. Comm’n App. 1931, judgm’t adopted).
In the absence of evidence of mala fides, the courts are disinclined to
interfere where the trustee has been given discretionary powers . . . . 
The court will refuse to review his decision in the absence of a showing
that he did not exercise his discretion in good faith or that his decision
was unreasonable; for the trustee in such case stands in the position of
an arbitrator.

Nations v. Ulmer, 122 S.W.2d 700, 703 (Tex. Civ. App.—El Paso 1938, writ dism’d)
(quoting 42 Tex. Jur. 96).
          In this case, there has been no pleading or proof that the Trustees have acted
with mala fides or a lack of good faith. Instead, by seeking a declaratory judgment
that the trustees are authorized to fund the proposed LaMatta trust—i.e., that funding
the proposed trust is in Ugo’s best interest—the Guardian has effectively bypassed
the Trustees and prevented them from determining what action, in their opinion, is
in Ugo’s best interest. Similarly, by declaring that the Trustees are authorized to fund
the proposed LaMatta trust, the trial court has usurped a power granted exclusively
to the trustees under the Cullens’ wills; the power to determine when Ugo’s best
interest would be served by distributions made from the trust estate. See Aguilar v.
Garcia, 880 S.W.2d 279, 281 (Tex. App.—Houston [14th Dist.] 1994, orig.
proceeding) (noting that trial court had no discretion to limit discretionary authority
granted solely to trustee by statute). 
          We have found no Texas case that directly discusses the availability of
declaratory relief to a beneficiary seeking to compel a trustee to exercise his
discretion in a certain manner. However, we find the following language to be
instructive and equally applicable to the present situation:
The life beneficiaries are given no power by the terms of the will
creating the trust to interfere with the trustee in the administration of its
trust, and the law gives them no such power. The manner in which a
trustee shall exercise his function rests ordinarily within his discretion. 
If he exceeds his powers, acts negligently, or abuses his discretion, a
beneficiary injured thereby may have redress, but a beneficiary has no
power to control the action of the trustee . . . . Thus a controversy
between trustee and beneficiary as to the wisdom of a suggested action
by the trustee where there is room for choice does not concern ‘rights
and other relations’ of the parties, and forms no basis for a declaratory
judgment.

City Bank Farmers’ Trust Co. v. Smith, 263 N.Y. 292, 295, 189 N.E. 222, 223 (N.Y.
1934); see also In re Carwithen’s Estate, 327 Pa. 490, 493–94, 194 A. 743, 745–46
(Pa. 1937).
          We conclude that the ultimate issue decided by the trial court—whether Ugo’s
best interest would be served by funding the proposed LaMatta trust—did not present
a justiciable controversy for the trial court to resolve because the issue should have
been left to the Trustees’ discretion. See State Bar of Texas v. Gomez, 891 S.W.2d
243, 246 (Tex. 1994) (holding that declaratory judgment action seeking to compel
creation of mandatory pro bono program did not create a justiciable controversy
because supreme court, not trial court, had exclusive authority to regulate legal
profession).
On Whether the In Terrorem Clauses Have Been Violated
          Each of the Cullens’ wills contains the following in terrorem or “no contest”
clause:
Should any beneficiary hereunder, or anyone duly authorized to act for
such beneficiary, institute or direct, or assist in the institution or
prosecution of, any action or proceeding of any kind in any court, at any
time, for the purpose of modifying, varying, setting aside or nullifying
any provision hereof relating to my Louisiana estate on any ground
whatsoever, all interest of such beneficiary, and the issue of such
beneficiary, to my Louisiana estate shall cease, and the interest of such
beneficiary, and such beneficiary’s issue, in and to my Louisiana estate
shall be paid, assigned, transferred, conveyed, and delivered to, or for
the benefit of, those person who would take such beneficiary’s interest
in my Louisiana estate if such beneficiary died intestate, unmarried, and
without issue on the date of the institution of the above described action
or proceeding. (Emphasis added).

          The Guardian moved for summary judgment contending that, as a matter of
law, he had not violated the in terrorem clauses by filing the present declaratory
judgment action or the application to make tax-motivated gifts to the LaMattas. The
trial court granted the Guardian’s motion, stating in the Final Judgment:
That the In Terrorem Clauses contained in both Paragraph 6.C of the
First Codicils of both H.R. Cullen and Lillie C. Cullen have not been
violated by Petitioner’s filing of the Petition and/or by Petitioner’s
participation in this proceeding and
 
That the In Terrorem Clauses contained in Paragraph 6.C of the First
Codicils of both H.R. Cullen and Lillie C. Cullen have not been violated
by Petitioner’s filing of the Application to Make Tax-Motivated Gifts
for the Benefit of Annunziata LaMatta and Family under Cause Number
094,467 styled In Re: Guardianship of Ugo Di Portanova, a Partially
Incapacitated Person.

          The Di Portanovas argue that “[t]he proceedings that the Guardian and [Ugo]
filed in the Probate Court sought to modify, nullify and vary the purpose and effect
of the Louisiana Trust by, as a practical matter, changing the beneficiaries of the
trust.” Therefore, the issue before the Court is whether the Guardian’s request for
declaratory relief and application to make tax-motivated gifts to the LaMattas were
brought for “the purpose of modifying, varying, setting aside or nullifying any
provision [of the Cullins’ codicils],” as prohibited by the in terrorem clauses. 
          In determining whether a beneficiary has violated an in terrorem clause, we
strictly construe the clause. Conte v. Conte, 56 S.W.3d 830, 832 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). A breach of such a clause will be found
only when the acts of the parties clearly fall within the express terms of the clause. 
Ferguson v. Furguson, 111 S.W.3d 589, 599 (Tex. App.—Fort Worth, 2003, pet.
denied); In re Estate of Hamill, 866 S.W.2d 339, 342–43 (Tex. App.—Amarillo 1993,
no pet.); Gunter v. Pogue, 672 S.W.2d 840, 842 (Tex. App.—Corpus Christi 1984,
writ ref’d n.r.e).
          Texas courts have routinely held that actions that do not seek to alter the terms
of the will do not violate in terrorem clauses. In Estate of Hamill, three beneficiaries
filed suit opposing the administrator’s payment of a certain debt by the estate. 866
S.W.2d at 345. The will contained an in terrorem clause and further provided that the
administrator was to pay debts and taxes payable at the time of the testatrix’s death. 
Id. The court of appeals held that the “action [by the beneficiaries] to determine the
validity of the debt assertedly owed by an estate . . . would be in pursuance of an
obligation under the will to ascertain whether any such debts were properly payable
and would not constitute a contest of the will.” Id.; see also Fergusen, 111 S.W.3d
at 599 (holding that beneficiary’s complaint against inventory filed by executor did
not violate in terrorem clause of husband’s will); Conte, 56 S.W.3d at 832 (holding
that action to remove co-trustee did not violate in terrorem clause); Estate of Newbill,
781 S.W.2d 727, 728 (Tex. App.—Amarillo 1989, no writ) (holding action
challenging qualifications of executor did not violate in terrorem clause); In re Estate
of Hodges, 725 S.W.2d 25, 268 (Tex. App.—Amarillo 1986, writ ref’d n.r.e) (holding
that action seeking declaratory judgment that non-beneficiary executor had no
standing to contest family settlement agreement was action to construe, rather than
contest, will).
          In this case, the Guardian sought a declaration that the trustees had the power,
or were authorized, to make the proposed gift to the LaMatta’s trust from the corpus
of the New Louisiana Trust. He did not, as the Di Portanovas argue, seek to change
the beneficiary of the New Louisiana Trust, which would at all times be Ugo. The
Guardian merely sought a declaration that the trustees were authorized to fund the
proposed gift to the LaMattas. While we have already held that this request for
declaratory relief did not present a justiciable issue for the trial court because it
infringed on the discretion given solely to the trustees, the Guardian’s request did not
seek to modify, vary, set aside, or nullify the terms of the Cullens’ codicils. The
codicils authorize the Trustees to disperse the corpus of the trust if, in their discretion,
it would be in Ugo’s best interest for them to do so. The Guardian’s request for
declaratory relief, though improperly presented to the trial court, did not seek to alter,
but to clarify this authority.
CONCLUSION
          Because the issue of whether the funding of the proposed LaMatta trust should
have been left to the discretion of the trustees, not the court, there was no justiciable
controversy before the trial court on this issue. If a justiciable controversy does not
exist between the parties, a court must dismiss the case for lack of jurisdiction. 
Lavely, 976 S.W.2d at 897. Accordingly, we sustain the Trustees’ first issue on
appeal. There being no justiciable controversy, we reverse the portion of the
judgment of the trial court declaring that the Trustees are authorized to make
distributions from the First Louisiana Trust to the LaMattas and render judgment
dismissing that portion of the case for want of jurisdiction. 
          Because the Guardian did not seek to modify, vary, set aside, or nullify the
terms of the Cullins’ codicils, the trial court’s declaration that the in terrorem clauses
were not violated is not error. Accordingly, we overrule the Di Portanovas’ first issue
on appeal. We affirm the portion of the judgment declaring that the Guardian did not
violate the in terrorem clauses.
          In light of our dispositions above, we need not address the remaining issues
raised by the parties, and decline to do so.





                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.