Affirmed and Memorandum Opinion filed June 15, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00978-CV

___________________

 

Brooks Thompson and Ian Tunnicliffe,
Appellants

 

V.

 

Raymond Kerr, Appellee



 



 

On
Appeal from the 270th District Court

Harris County,
Texas



Trial Court Cause No. 2007-74509

 



 

 

MEMORANDUM OPINION

Appellants, Brooks Thompson and Ian Tunnicliffe,
filed suit against appellee, Raymond Kerr, alleging he violated his duties as a
trustee.  Appellee, asserting numerous different grounds, filed a traditional
motion for summary judgment, which the trial court granted.  Appellants now
appeal the trial court’s summary judgment.  Because we conclude appellants
waived their claims against appellee, we affirm the trial court’s summary
judgment.

Factual and Procedural Background

            In 1968, the
Mowry family purchased Gull Industries, Inc.  Kelly Mowry began working in the
business in 1968 and eventually took over running it from his father.  Mowry
hired appellants to help manage the company.

            Eventually,
appellants suggested a plan that, if implemented as they suggested, would
result in gross sales of $5 million for the year 2006.  In return, appellants
would receive an equity interest in Gull Industries.  Based on appellants’
representations, Mowry and his mother, Irma Knowlton, reached an agreement with
appellants entitled “Ownership Changes in Gull Industries, Inc.” (“Gull
Ownership Agreement”).  As a result of the Gull Ownership Agreement, Mowry held
787 shares of Gull Industries stock, Knowlton held 200 shares, and appellee
held 790 shares as trustee for the benefit of appellants.  The initial term of
the Gull Ownership Agreement was to be from January 1, 2006 until the time in
2007 when the parties could determine whether Gull Industries’ 2006 gross
revenues had reached $5 million.  If the $5 million level had been achieved,
then appellee was to transfer 395 shares to Thompson and 395 shares to
Tunnicliffe.  If the $5 million level had not been reached, then appellee was
to transfer the 790 shares directly to Mowry.

            In conjunction
with the Gull Ownership Agreement, appellants entered into a voting trust
agreement with appellee.  The voting trust agreement incorporated the timeline
for achieving the $5 million level for gross revenue from the Gull Ownership
Agreement.  Eventually, appellants and appellee signed an amended voting trust
agreement which removed the 2006 deadline for reaching the $5 million gross
revenue level.  Mowry and Knowlton did not sign the amended voting trust
agreement.

            At a time not
disclosed in the record, Thompson moved to Florida and Tunnicliffe left the
United States and was unable to re-enter.  Based on these developments,
appellee, on July 31, 2007, sent a letter to both appellants as well as to
Mowry.  In this letter, appellee wrote: “[b]ased on all of this information, I
as Trustee, working in the best interest of my clients Gull Industries and Erma
Knowlton, have determined that it is in the best interest of those clients to
terminate the Voting Trust, and I have conveyed the 790 Gull Shares in the
Trust back to [Mowry].”  In response to this letter, appellants noticed a Gull
Industries board of directors meeting in Reynosa, Mexico.

As a result of this notice, Mowry initiated
litigation against appellants seeking a temporary restraining order and a
permanent injunction.  Mowry and appellants eventually mediated their dispute which
resulted in a Settlement and Release Agreement (the “Settlement Agreement”).  The
Settlement Agreement provides in pertinent part:

WHEREAS, Mowry, Thompson and Tunnicliffe entered into an
agreement known as the Voting Trust Agreement effective January 1, 2006
(“Voting Trust”, the Ownership Agreement and the Voting Trust, as amended, are
referred to as the “Shareholder Agreements”); …

WHEREAS, the Parties attended a mediation and resolved
their disputes arising out of the Shareholder Agreements and the Lawsuit as
aforesaid; and

… the parties hereto desire to compromise and settle any
and all claims and causes of action of any kind whatsoever which either Party
has or may have against the other arising from the Agreement, and intend that
the full terms and conditions of this compromise, settlement and release be set
forth in this Agreement; and

WHEREAS, in order to resolve their disputes, Thompson and
Tunnicliffe agree to sell their stock and/or ownership interests in the Company
to Mowry and resign from all positions and directorships they hold in the
Company in return for the purchase of all the stock in the Company held by
Thompson and Tunnicliffe, whether owned individually or held in trust, for the
payment of One Million Dollars, …

C.        Share Transfer. 
Upon payment of the Initial Payment, Thompson and Tunnicliffe will transfer
their shares in the Company, including 790 shares currently held in trust, into
the Escrow.  Following completion of the payments to Thompson and Tunnicliffe,
the Escrow shall be closed and all shares therein transferred to Mowry. …

E.         Lawsuit.  Upon
delivery of the Initial Payments to Thompson and Tunnicliffe, the Parties will
enter an agreed take nothing judgment of all claims in the Lawsuit …

F.         Shareholder
Agreements.  Upon payment of the Initial Payment and Dismissal of the
Lawsuit, the Shareholder Agreements shall be cancelled. …

3.         RELEASE BY THOMPSON AND TUNNICLIFFE

Thompson and Tunnicliffe, for and
in consideration of the recitals and consideration described above, the receipt
and sufficiency of which are hereby acknowledged, have this day released and by
these presents do release, acquit, and forever discharge Mowry and the Company,
their heirs, successors and assigns, officers, directors, employees, and
agents, from any and all claims or causes of action of any kind whatsoever,
related to their stock or any ownership interest in the Company, the
termination of the Shareholder Agreements, Voting Trust Agreement or Amended
and Restated Voting Trust Agreement, and any fees or expenses arising
therefrom, at common law, by statute, or otherwise, which Thompson and
Tunnicliffe have or might have, known or unknown, now existing or that might
arise hereafter, directly or indirectly attributable to the above described
controversy, it being intended to release all claims of any kind which Thompson
and Tunnicliffe might have against those hereby released including Mowry and
the Company.  All parties intend this release to be construed in the broadest
manner allowed by Texas law as all parties intend to release every claim that
they have against the other, other than claims arising out of this Settlement
and Release Agreement. …

7.         COVENANT NOT TO SUE

In further consideration of the
mutual covenants set forth herein, the parties specifically agree never to
institute any action or suit at law or in equity one against the other or
institute, prosecute or in any way aid in the institution or prosecution of any
claim, demand, action or cause of action whether known or unknown, past, present
or future, arising out of, or in any way related to or concerning the
Shareholder Agreements or the Lawsuit, provided that this section may not be
read or construed to affect any right to enforce the terms of this Agreement.

Following the mediated settlement,
the trial court signed an agreed final judgment dismissing Mowry’s claims
against appellants and appellants’ counterclaims against Mowry.

            Soon after the
settlement, appellants initiated this lawsuit against appellee asserting causes
of action for breach of fiduciary duty, breach of contract, and breach of
trust.  All three causes of action were based on the same factual basis: that
appellee’s July 31, 2007 letter violated the amended trust agreement. 
Eventually, appellee moved for summary judgment on several affirmative
defenses: collateral estoppel, the one satisfaction rule, waiver, release, and
the covenant not to sue.  In addition to a summary judgment response,
appellants also moved for partial summary judgment on some liability aspects of
their claims against appellee.  The trial court denied appellants’ motion for
partial summary judgment.  The trial court then, without specifying the grounds
relied on, granted appellee’s motion on each of appellants’ causes of action. 
This appeal followed.

Discussion

            In six issues on
appeal, appellants challenge the trial court’s granting of appellee’s motion
for summary judgment, as well as the denial of their motion for partial summary
judgment.

I.         The Standard of
Review

            The movant for
summary judgment has the burden to show there is no genuine issue of material
fact and it is entitled to judgment as a matter of law.  Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  In determining whether there
is a genuine fact issue precluding summary judgment, evidence favorable to the
non-movant is taken as true and the reviewing court makes all reasonable
inferences and resolves all doubts in the non-movant’s favor.  Id. at
548–49.  A defendant is entitled to a summary judgment on an affirmative defense
if the defendant conclusively proves all the elements of the affirmative
defense.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999).  To accomplish this, the defendant must present summary judgment
evidence that establishes each element of the affirmative defense as a matter
of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996). 
Once the movant establishes its right to summary judgment, only then does the
burden shift to the non-movant to come forward with competent controverting
evidence raising a genuine issue of material fact.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  If there is no genuine issue of
material fact, summary judgment should issue as a matter of law.  Haase v.
Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  We review a trial court’s summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661
(Tex. 2005).  We may affirm a summary judgment only on grounds specifically
stated in the motion.  Cruikshank v. Consumer Direct Mortg., Inc., 138
S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  Where, as
here, the trial court’s order granting summary judgment does not specify on
what grounds it was granted, it must be affirmed if any of the grounds asserted
are meritorious.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.
2005).

II.        Did appellants
waive their causes of action against appellee?

            In their third
issue, appellants assert that the trial court erred when it granted appellee’s
motion for summary judgment on the affirmative defense of waiver.  We disagree.

            Waiver is an
affirmative defense and may be grounds for summary judgment.  See Tenneco
Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996) (providing an
example of when evidence is sufficient to establish waiver for summary
judgment).  Waiver is the intentional relinquishment of a right actually known,
or intentional conduct inconsistent with claiming that right.  Ulico Cas.
Co. v. Allied Pilots Ass’n, 262 S.W.3d 773, 778 (Tex. 2008); Tennec,
Inc., 925 S.W.2d at 643.  The elements of waiver include (1) an existing
right, benefit, or advantage held by a party; (2) the party’s actual knowledge
of its existence; and (3) the party’s actual intent to relinquish the right, or
intentional conduct inconsistent with the right.  Ulico Cas. Co., 262
S.W.3d at 778.  The right, benefit, or privilege must exist before the waiver
occurs.  Tri-Steel Structures, Inc. v. Baptist Found. of Texas, 166
S.W.3d 443, 451 (Tex. App.—Fort Worth 2005, pet. denied).  Intent to waive must
be clear, decisive, and unequivocal.  Ferguson v. Ferguson, 111 S.W.3d
589, 598 (Tex. App.—Fort Worth 2003, pet. denied).  A court should find waiver
where a party unequivocally manifested an intent to no longer assert its
rights.  Robinson v. Robinson, 961 S.W.2d 292, 299 (Tex. App.—Houston
[1st Dist.] 1997, no writ).

Although waiver is generally a question of fact to be
determined by a jury, if the facts and circumstances are clearly established,
then waiver becomes a question of law.  Tenneco Inc., 925 S.W.2d at
643.  Here, appellee’s waiver argument rests entirely on the language of the Settlement
Agreement between appellants and Mowry; therefore, the facts are undisputed and
waiver is a question of law in this instance.  Motor Vehicle Bd. of the Tex.
Dep’t. of Transp. v. El Paso Indep. Auto. Dealers Ass’n, 1 S.W.3d 108, 111
(Tex. 1999).

            It is undisputed
that appellants signed the Settlement Agreement with full knowledge of their
potential claims against appellee.  Appellee’s letter that serves as the basis
for appellants’ causes of action against appellee is dated July 31, 2007. 
Mowry filed suit against appellants on August 16, 2007 and that lawsuit was
settled and the Settlement Agreement was signed on November 12, 2007.

The Settlement Agreement contains the following
language: “the parties specifically agree never to … institute, … prosecute or
in any way aid in the institution or prosecution of any claim, demand, action
or cause of action whether known or unknown, past, present or future, arising
out of, or in any way related to or concerning the Shareholder Agreements ….”  In
addition, in the Settlement Agreement, the parties agreed that “[u]pon payment
of the Initial Payment and Dismissal of the Lawsuit, the Shareholder Agreements
shall be cancelled.”  The Settlement Agreement defined “Shareholder Agreements”
as including not only the Gull Ownership Agreement, but also the original and
amended voting trust agreements.  We conclude this language establishes that
appellants waived any claims they may have had against appellee in any way
related to the voting trust agreements and the trial court did not err when it
granted appellee’s motion for summary judgment based on waiver.  See Tenneco
Inc., 925 S.W.2d at 643 (“A party’s express renunciation of a known right
can establish waiver.”); see also Ford v. Culbertson, 308 S.W.2d 855,
865 (Tex. 1958) (“A waiver … occurs where one in possession of any right,
whether conferred by law or by contract, with full knowledge of the material
facts, does or forbears to do something, the doing of which or the failure or
forbearance to do which is inconsistent with the right or his intention to rely
upon it.”); see also STS Gas Services, Inc. v. Seth, No.
13-05-463-CV, 2008 WL 152229, at *8 (Tex. App.—Corpus Christi Jan. 17, 2008, no
pet.) (mem. op.) (affirming summary judgment based on waiver arising out of
representation made to a third party by the predecessor to nonmovant).  We
overrule appellants’ third issue and affirm the trial court’s summary judgment
in favor of appellee.[1]

            

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

 

 

Panel consists of Justices
Anderson, Boyce, and Sullivan.

 









[1] Because we have affirmed the trial court’s summary
judgment based on waiver, we need not address appellants’ remaining issues.  Tex. R. App. P.
47.1; W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).