**Opinion issued November 30, 2012.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-10-01019-CV**

———————————

**ANTONELLA APUZZO DI PORTANOVA AND PAUL PIERO DI PORTANOVA, Appellants**

**V.**

**RICHARD E. MONROE, JR., GUARDIAN OF THE ESTATE OF UGO DI PORTANOVA, WARD, A PARTIALLY INCAPACITATED PERSON; JAMES PATRICK SMITH, GUARDIAN AD LITEM FOR UGO DI PORTANOVA, WARD, A PARTIALLY INCAPACITATED PERSON; AND TINA LAMATTA, GUARDIAN OF THE PERSON OF UGO DI PORTANOVA, WARD, A PARTIALLY INCAPACITATED PERSON, Appellees**

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Case No. 94467438**

# OPINION

In this appeal, we consider whether a suit for non-dispositive administrative consolidation of several trusts, filed by guardians of a partially incapacitated person pursuant to Section 112.054 of the Texas Property Code, triggered an *in terrorem*[1] clause in the wills creating the trusts, thus resulting in a forfeiture of the ward's interest in the trusts. We affirm.

## BACKGROUND

### The Parties

Ugo Di Portanova is the 74-year-old grandson of H.R. and Lillie Cullen. Ugo is partially incapacitated[2] and has lived with Annunziata and Umberto LaMatta since 1974. In 1998, Tina LaMatta was appointed as guardian of Ugo's person. Richard Monroe is the guardian of Ugo's estate. James Patrick Smith is Ugo's guardian ad litem. Collectively, we refer to LaMatta, Monroe, and Smith as "the Guardians."

Paul Piero Di Portanova and Antonella Apuzzo Di Portanova ["the Di Portanovas"] were adjudicated to be Ugo's half-siblings by a 1996 judgment in a paternity suit filed in an Italian court. The Di Portanovas and Ugo share the same

---

[1] An *in terrorem* or "no contest" clause in a will is a clause that provides that a beneficiary who contests the will forfeits his interest thereunder. *See Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex. App.—Fort Worth 2003, pet. denied).

[2] The trial court has described Ugo as a person "of limited mental capability," but has nonetheless recognized that he is sufficiently competent to exercise testamentary capacity.

2

father—Paolo Di Portanova, but Ugo's mother is Lillie Cullen Di Portanova, the daughter of H.R. and Lillie Cullen, and the Di Portanovas' mother is D'Alesandro Filament, a woman from Naples, Italy.

Max Butler, Robert Hux, and Robert A. Higley ["the Trustees"] were co-trustees of the H.R. Cullen and Lillie C. Cullen New Louisiana Trust, a trust established by the Cullens in their wills for the benefit of their grandson, Ugo. The Trustees have settled their interest in this case, and are not parties to this appeal.

### *The Cullens' Wills and Codicils Create a Discretionary Trust*

H.R. and Lillie Cullens' wills each contained a codicil that provided for the creation of certain trusts to hold their Louisiana property, which, at the time, consisted mostly of certain mineral interests. Ugo was the beneficiary of two such trusts—one created under each will. In 1996, the trial court granted a judgment merging the trusts, and the H.R. Cullen and Lillie C. Cullen New Louisiana Trust ("the New Louisiana Trust") was created.[3] After the trusts were merged, all Louisiana properties were sold and there are no assets in the New Louisiana Trust located in the State of Louisiana.

The codicils establishing the trusts provide in relevant part that "the Trustee, from time to time, may distribute to the person for whom such Trust was created

---

[3] No party objected to the 1996 judgment, nor alleged that the merger of those trusts violated the *in terrorem* clause in the wills.

such amounts of such Trust Estate as, in the discretion of the Trustee, are in the best interests of such person . . . ." The codicils further provide that upon Ugo's death, "the Trust Estate of such Trust shall be distributed to such person's heirs-at-law under the Louisiana statutes of descent and distribution in effect at that time . . . ."[4]

The Cullen wills that created the trusts contained a provision making each testator's spouse the trustee, or, if deceased, the testator's daughters. The provision also contained provisions regarding the appointment of successor trustees, as follows:

> I appoint my [wife or husband] Trustee of all Trusts created or continued herein. If my wife shall, for any reason, fail or cease to act, I appoint my daughters, AGNES CULLEN ARNOLD, MARGARET CULLEN MARSHALL, AND WILHEMINA CULLEN ROBERTSON, to serve as a Board of substitute or successor Trustees. If any one or more of the substitute or successor Trustees shall, for any reason, fail or refuse to act, the remaining Trustees shall appoint (by written instrument filed in the Court in which this Will is first probated) a sufficient number of substitute or successor Trustees so that there shall be three (3) Trustees acting at all times; provided, nevertheless, that, in the interval prior to the appointment of such substitute or successor Trustees, the remaining Trustee or Trustees shall have and exercise all powers which might be exercised by the full Board of three (3) Trustees. If, at any time or for any reason, there is no Trustee acting hereunder, a new full Board of three (3) Trustees shall be appointed (by written instrument filed in the Court in which this Will is first probated) by the senior Judge (in years of service in such capacity) of the District Court of the State of Texas,

---

[4] As Ugo's only living relatives through their mutual father, the Di Portanovas claim that they would be Ugo's "heirs-at-law." Thus, the Di Portanovas claim to be contingent beneficiaries of the Cullens' wills.

4

the jurisdiction of which includes any part of Harris County, Texas, acting as an individual. In all appointments to said Board, it is my request that preference be given to my relatives and those of my [wife or husband]; however, anything to the contrary herein notwithstanding, not more than one member of said Board so appointed shall be an income beneficiary under any Trust created herein.

### *The Previous Lawsuit and Appeal*

In 2003, the Guardian of Ugo's estate filed an "Application to Make Tax-Motivated Gifts for the Benefit of Annunziata LaMatta and Family," in which he sought to use over five million dollars from the New Louisiana Trust to fund a new trust to be established for the benefit of Annunziata LaMatta and her family. The Guardian of Ugo's estate also sought a judgment declaring that the Cullens' wills permitted such a distribution.

On November 23, 2004, the trial court signed a Final Declaratory Judgment, in which the trial court declared that the Cullens' wills and codicils authorized the Trustees to make the proposed gifts to the LaMattas, including the payment of the federal gift taxes owing thereon. The final judgment also declared that the Guardian had not violated the *in terrorem* clauses by filing the petition for declaratory judgment, participating in the proceedings, or filing the application to make tax-motivated gifts for the benefit of the LaMatta family.

On appeal, this Court held that the trial court (1) correctly determined that the Guardian's filing the petition for declaratory judgment, participating in the

5

proceedings, and filing the application to make tax-motivated gifts for the benefit of the LaMatta family request for a declaratory judgment did not violate the *in terrorem* clauses in the Cullens' wills, but (2) it lacked jurisdiction to determine whether the LaMatta trust should be funded because that was a matter that should have been left to the Trustees' discretion. *Di Portanova v. Monroe*, 229 S.W.3d 324, 333–34 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Accordingly, this Court affirmed the trial court's judgment declaring that the *in terrorem* clauses had not been violated, but vacated and dismissed the portion of the judgment declaring that the Trustees were authorized to make the proposed distribution to LaMatta. *Id.* at 327.

### *Proceedings on Remand*

On October 28, 2009, the Guardians filed an "Original Petition For Declaratory Judgment, To Modify and Administratively Consolidate Eight Trusts for Ugo Di Portanova, And to Change Trustees." In this petition, the guardians alleged as follows:

> [Guardians] ask this Court to order the modification of the terms of eight trusts [including the H.R. Cullen and Lillie C. Cullen New Louisiana Trust] operated by ten separate trustees for the benefit of a partially incapacitated, 73-year old ward, Ugo, and to make corresponding arrangements for changes in the ten trustees administering those trusts. Petitions seek this relief for non-dispositive, administrative purposes. Granting this request will result in consistent, financially-transparent, institutional, trust-department accounting for the benefit of Ugo and save an estimated $313,000 in

6

> unnecessarily duplicative trustees' fees, expenses and administrative charges on an annual basis.

All trustees of the eight trusts agreed to resign, with the exception of the three trustees of the New Louisiana Trust—Hux, Butler, and Higley. These three trustees did not resign, but filed a counterclaim.

The Di Portanovas intervened and filed a counterclaim opposing the administrative, non-dispositive trust consolidation. They also alleged that the *in terrorem* clause of the Cullen wills had been violated.

As the case was being tried, the trial court temporarily adjourned the proceedings to permit the guardians and the three trustees of the New Louisiana Trust to settle their differences. On July 29, 2010, the Guardians and the Trustees entered into a Rule 11 partial settlement agreement, in which no party admitted to any wrongdoing or omission of responsibility. On October 12, 2012, the parties, with the exception of the Di Portanovas, presented the trial court with a Settlement Agreement. In the agreement, the Trustees agreed to resign in exchange for a release of liability and a judicial discharge from the Court.

After the Trustees settled their differences with the guardians, the trial reconvened. At the conclusion of the trial, the trial court (1) declared that it had the power to grant the Guardians' request for relief under sections 112.054(a)(2) and (3) and 112.054(b), as well as section 604 of the Texas Probate Code, and (2) signed a "Judgment of Non-Dispositive, Administrative Consolidation of Eight

7

Trusts Operated for the Benefit of the Ward, Ugo Di Portanova." As a part of the consolidation, the trial court modified the eight trusts involved to permit it to appoint successor trustees for those that had resigned.[5] The trial court further found "that [the Di Portanovas] have failed to bear their burden of proving their *In Terrorem* counterclaim for alleged violations of the *In Terrorem* Clauses in the Cullen Wills and codicils."

## THE *IN TERROREM* CLAUSES

In three related issues on appeal, the Di Portanovas contend that the trial court erred in concluding that the *in terrorem* clauses in the Cullen wills had not been violated. Specifically, they argue that the "no-contest provision prohibits any action, of any kind, at any time, on any ground whatsoever, brought for the purpose of varying, modifying, or setting aside any provision of the will." The Di Portanovas argue that, because the present suit violated the *in terrorem* clause by seeking to modify how successor trustees are named, Ugo's interest in the trust created by the wills must be forfeited, and the property of the trusts should be transferred to them as Ugo's "heirs-at-law." The Guardians respond that (1) the suit filed pursuant to section 112.054 of the Property Code does not violate the *in*

---

[5] The Cullen wills each provided that the testator's spouse would be the trustee, followed by the testator's three daughters if the spouse was unable to act. If one of the daughters was unable to act, the remaining daughters would appoint a trustee, so that there would be three trustees. If there were no remaining trustees, the wills provided that the senior judge in Harris County would appoint a new board of three trustees.

*terrorem* clause because it is not contrary to the testators' intent; and (2) if it does violate the clause, such violation will not trigger a forfeiture because the suit was filed in good faith based on probable cause.

Each of the Cullens' wills contains the following *in terrorem* or "no contest" clause:

> Should any beneficiary hereunder, or anyone duly authorized to act for such beneficiary, institute or direct, or assist in the institution or prosecution of, any action or proceeding of any kind in any court, at any time, ***for the purpose of modifying, varying, setting aside or nullifying any provision hereof relating to my Louisiana estate on any ground whatsoever, all interest of such beneficiary, and the issue of such beneficiary, to my Louisiana estate shall cease***, and the interest of such beneficiary, and such beneficiary's issue, in and to my Louisiana estate shall be paid, assigned, transferred, conveyed, and delivered to, or for the benefit of, those person who would take such beneficiary's interest in my Louisiana estate if such beneficiary died intestate, unmarried, and without issue on the date of the institution of the above described action or proceeding.

(Emphasis added).

### *Applicable Principles of Law*

An *in terrorem* clause in a will or a trust typically makes the gifts in the instrument conditional on the beneficiary not challenging or disputing the validity of the instrument. *See, e.g.*, *In re Estate of Hamill*, 866 S.W.2d 339, 341 n.1 (Tex. App.—Amarillo 1993, no writ) ("The term, *in terrorem,* as applied to wills refers to a legacy given upon condition that the beneficiary will not dispute the validity or disposition of the will."). *In terrorem* clauses are designed to dissuade beneficiaries

9

from filing vexatious litigation, particularly as among family members, that might thwart the intent of the grantor. *See Lesikar v. Moon*, 237 S.W.3d 361, 369–70 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

*In terrorem* clauses allow the intent of the testator to be given full effect and avoid vexatious litigation, often among members of the same family. *Gunter v. Pogue*, 672 S.W.2d 840, 842–43 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *see also Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex. App.—Fort Worth 2003, pet. denied) (stating the purpose of the *in terrorem* clause is to dissuade beneficiaries from challenging gifts made in the will). If the intention of a suit is to thwart the settlor's intention, the *in terrorem* clause should be enforced. *Ferguson*, 111 S.W.3d at 599. A violation of the *in terrorem* clause will be found only when the acts of the parties clearly fall within its express terms. *Hamill,* 866 S.W.2d at 342–43. Thus, we narrowly construe *in terrorem* clauses to avoid forfeiture, while also fulfilling the settlor's intent. *McLendon v. McLendon*, 862 S.W.2d 662, 678 (Tex. App.—Dallas 1993, writ denied).

### *Does this Suit filed pursuant to Section 112.054 of the Property Code Trigger a Forfeiture under the In Terrorem Clauses?*

The first issue this Court must decide is whether this suit, which was filed pursuant to Section 112.054 Property Code, thwarts the testator's intent, thus triggering a forfeiture.

10

Section 112.054 of the Property Code provides trustees and beneficiaries the statutory right to seek judicial modification of trust provisions under certain circumstances, and provides in pertinent part:

(a) On the petition of a trustee or a beneficiary, a court may order that the trustee be changed, that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, that the trustee be prohibited from performing acts required by the terms of the trust, or that the trust be terminated in whole or in part, if:

. . . .

(2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust; [or]

(3) modification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the trust's administration[.]

(b) The court shall exercise its discretion to order a modification or termination under Subsection (a) in the manner that conforms as nearly as possible to the probable intention of the settlor. . . . .

TEX. PROP. CODE ANN. § 112.054(a)(2), (3), (b) (Vernon 2007). The trial court found that consolidation of the trusts was appropriate under the above-referenced statute and stated as follows:

Because of circumstances not known to or anticipated by the settlors, the original terms of the Eight Trusts would substantially impair the accomplishment of the purposes of the Eight Trusts in ways H.R. Cullen, Lillie C. Cullen, and Lillie Cranz Portanova (collectively, the "Cullen Trustors") could not have anticipated, e.g., that Ugo would be subject to a guardianship of this complexity and cost; that no relative would be serving as trustee of the Eight Trusts; that Jack Trotter ("Trotter") and Monroe would serve as successive Guardians of Ugo's

11

Estate, LaMatta as Guardian of Ugo's Person, and Smith as Ugo's Guardian ad Litem. The Cullen Trustors could not have anticipated the expense and professional fees needed to care for Ugo and to manage assets placed in trust for his benefit. The Cullen Trustors could not have anticipated the significant changes in federal tax law which now emphasize the need for comprehensive coordination of investment decisions affecting the administration of the Eight Trust and the income of the beneficiary.

The trial court then ordered the consolidation of the eight trusts, including the New Louisiana Trust, and, in connection with the consolidation, changed the trust instruments to provide that successor trustees would be named by the Judge of Harris County Probate Court No. 2, rather than "the" senior district court judge in Harris County, and also modified how the trustees would be compensated.

The Di Portanovas do not challenge the trial court's decision to order consolidation. Similarly, they do not argue now nor did so before the trial court that the trial court overstepped its authority by providing that successor trustees would be named by the trial court rather than "the" senior judge in Harris County. Instead, they argue only that by seeking any consolidation of the trusts, the Guardians have caused a forfeiture of Ugo's interest under the will.

Texas courts have addressed a myriad of different types of lawsuits with similarly expansive *in terrorem* clauses to determine whether the purpose of the suit was to thwart the settlor's intention and concluded that the following suits do not trigger forfeitures: (1) to recover an interest in devised property; (2) to compel an executor to perform duties; (3) to ascertain a beneficiary's interest under a will;

12

(4) to compel the probate of a will; (5) to recover damages for conversion of estate assets; (6) to construe a will's provisions; (7) to request an estate accounting or distribution; (8) to contest a deed conveying a beneficiary's interest; (9) to determine the effect of a settlement; (10) to challenge an executor appointment; (11) to seek redress from executors who breach fiduciary duties; and (12) presenting testimony in a will contest brought by other beneficiaries. *See* Gerry W. Beyer, Rob G. Dickenson & Kenneth L. Wake, *The Fine Art of Intimidating Disgruntled Beneficiaries with In Terrorem Clauses*, 51 SMU L. REV. 225, 255–58 (1998).

In *McLendon*, 862 S.W.2d at 667, the will at issue contained an *in terrorem* clause that prohibited any "attempts to attack, modify or impair the validity of the provisions hereof[.]" The court concluded that the breach of fiduciary suit against the executors named in the will did not contest the validity of the will itself. *Id.* at 679. The court further held that the *in terrorem* clause was not breached, basing its decision on the premise that "the right to challenge a fiduciary's actions is inherent in the fiduciary/beneficiary relationship. *Id.*

In *Estate of Newbill*, 781 S.W.2d 727, 728 (Tex. App.—Amarillo 1989, no writ), the *in terrorem* clause prohibited "directly or indirectly contest[ing] or attack[ing] this will or any of its provisions." The will also named a beneficiary, Joe Newbill, as executor without bond and as trustee of the corpus of the estate.

13

*Id.* Another beneficiary, Bennie Newbill, filed suit challenging Joe's statutory qualification to serve as executor. *Id.* at 729. The court held that Bennie's suit did not violate the *in terrorem* clause because:

> [w]e do not believe such an action can be considered as an effort to vary the purpose and intent of the textatrix within the purview of the forfeiture clause we are considering. To hold otherwise would be inconsistent with the obvious intent of the law to make sure that an applicant is properly qualified to execute the fiduciary duty necessary in the administration of a decedent's estate.

*Id.*

In *Conte v. Conte*, 56 S.W.3d 830, 831 (Tex. App.—Houston [1st Dist.] 2001, no pet.), the *in terrorem* clause prohibited any beneficiary or remainderman from contesting or challenging "this trust or any of its provisions," "in any manner, directly, or indirectly." The trust further provided that the grantor's surviving spouse and children would serve as co-trustees. *Id.* Soon thereafter, one co-trustee sued to remove another co-trustee. *Id.* The court held that the *in terrorem* clause was not violated by the suit because the trust did not have any provisions regarding the removal of trustees. *Id.* at 832. However, the court went further and, citing *McClendon* and *Newbill*, stated as follows:

> An action to remove a trustee, like an action to remove an executor, is not an effort to vary the grantor's intent. [Appellant's] interpretation of the in terrorem clause *would deprive [appellee] of her statutory rights under the trust provisions of the Texas Property Code*, as the proposed construction of the *in terrorem* clause in *Newbill* would have deprived the beneficiaries of the statutory right to ensure that the executor was qualified.

*Id.* at 833 (emphasis added).

14

Following this line of authority, we hold that the filing of this suit for judicial modification of the administrative terms of a trust, pursuant to section 112.038 of the Property Code, is not an action that was intended to thwart the Cullens' intent. First, no provision in the wills nor in the trusts they created forbids consolidation of the trusts. Thus, nothing in any trust prohibits administrative consolidation of the New Louisiana Trust with other trusts that were also established for Ugo's benefit. In fact, such a consolidation also occurred in 1996, and no party argues that the 1996 consolidation triggered the *in terrorem* clauses. To hold otherwise would deprive Ugo of a statutory right provided by the Probate Code, of which neither the wills nor the trusts express an intent to deprive him. We agree with *Conte* and *Newbill*—an in terrorem clause like this one does not deprive a beneficiary of a right afforded by statute related to trust administration when such administrative changes are not prohibited by the testator in the will and no party is challenging the changes as one that defeats testator intent. This suit, filed pursuant to section 112.054(a)(2), does not violate the Cullens' intent, because there are "circumstances not known to or anticipated by the settlor," and the order will "further the purposes of the trust." We note, however, that any modification under this section must "conform[] as nearly as possible to the probable intent of the settlor." TEX. PROP. CODE § 112.054(b).

15

The overarching purpose of all of these trusts is to "provide for the needs of the current income beneficiary, Ugo." This suit for modification of administrative, nondispositive terms of the trust, pursuant to section 112.054(a)(3), cannot violate the Cullens' intent because the purpose of the suit to consolidate them is "to prevent waste or avoid impairment of the trust's administration"—the very intent expressed in the trusts themselves. *See* TEX. PROP. CODE ANN. § 112.054(a)(3).

Finally, the consolidation of trusts reduced the total number of trustees from 10 to three, which is the number required by the Cullens' wills for the New Louisiana Trust. The resignation of numerous trustees to effectuate the consolidation necessitated changes to the trust provisions regarding the appointment and compensation of successor trustees. These modifications are the not the type of change that thwart the settlor's intent in establishing the trusts as expressed in the Cullens' wills. Administrative changes to these trusts, absent express prohibition or any challenge to their intended purpose as purely administrative, do not trigger the *in terrorem* clauses in the wills unless their effect is to undermine the wills' provisions.

To the extent that one of the trial court's modifications may have been neither authorized by the trust or by the Probate Code—namely, the modification which places successor trustee appointment power in the trial court, rather than the senior judge of Harris County—the Di Portanovas never specifically objected that

16

this modification exceeded the trial court's authority, nor do they challenge it on appeal. Rather, they argue that any administrative change, even one to which they have no objection, triggers the clause. But no Texas case has construed a clause like this one so broadly. *See Conte*, 56 S.W.3d at 831–33; *McLendon*, 862 S.W.2d at 679; *Newbill*, 781 S.W.2d at 729. As the Di Portanovas do not challenge any substantive change to the will or trust as thwarting the Cullens' intent in establishing the trusts, the *in terrorem* clause is not a sword they can wield to establish a forfeiture.

Accordingly, we hold that the trial court did not err in concluding that the *in terrorem* clauses had not been violated by the filing of an action pursuant to section 112.054 of the Probate Code because (1) Ugo had a statutory right to seek a judicial modification under the circumstances set forth in section 112.054 of the Probate Code, which the wills themselves do not prohibit, and (2) the modification of administrative, nondispositive terms of the trust regarding the appointment and compensation of successor trustees are not changes that thwart the Cullens' intent, which was to provide income for their grandson, Ugo, overseen by at least three trustees.

**CONCLUSION**

The trial court did not err in concluding that the *in terrorem* clauses of the Cullen wills were not violated when the Guardians filed suit pursuant to Section 112.054 of the Property Code seeking an administrative consolidation of eight trusts into one and modifying the successor trustee provisions because (1) Ugo had a statutory right to seek such a consolidation and (2) modification of the nondispositive, administrative provisions of the trust did not thwart the testators' intent as set forth in the wills themselves, and no party challenges the modifications to be anything other than administrative, as opposed to dispositive.

Because the *in terrorem* clauses were not violated, we need not address whether the Guardians filed the suit in good faith, and decline to do so.

We affirm the judgment of the trial court.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

18