

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00122-CV

———————————————

JENNIFER C. CASS AND NICHOLE R. MALICOAT, Appellants

V.

CHERYL ANNE HUGHES, AS TRUSTEE OF THE JIMMY CELTYN HUGHES
QTIP MARITAL TRUST, Appellee

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-340129-23

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an interlocutory appeal from the trial court's order denying Appellants Jennifer C. Cass and Nicole[1] R. Malicoat's motion to dismiss the lawsuit filed by Appellee Cheryl Anne Hughes, as Trustee of the Jimmy Celtyn Hughes QTIP Marital Trust on Texas Citizen's Participation Act (TCPA) grounds. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a)(12). In their sole issue, Cass and Malicoat argue that the trial court erred by denying their TCPA motion to dismiss. We will conclude that Cass and Malicoat have demonstrated that Hughes's lawsuit was based on or was in response to their exercise of the right to petition, and we will also conclude that Hughes has not established by clear and specific evidence a prima facie case for each essential element of her declaratory judgment claim—the only claim asserted by Hughes in this lawsuit. Thus, we will sustain Cass and Malicoat's sole issue, reverse the trial court's order denying their TCPA motion to dismiss, render judgment granting their TCPA motion to dismiss, and remand the case to the trial court for further proceedings consistent with this opinion and with Section 27.009(a)(1) of the Texas Civil Practice and Remedies Code. *See id.* § 27.009(a)(1)

---

[1]The style of this appeal lists Malicoat's first name as "Nichole" because that is how her first name was spelled in Cass and Malicoat's notice of appeal. In their brief, Cass and Malicoat state that "Nicole Malicoat is improperly named Nichole Malicoat in the style of the case." Because "Nichole" appears to be a typographical error, we list Malicoat's first name in the body of this opinion as "Nicole."

(providing that if a court orders dismissal of a legal action under the TCPA, the court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action").

## II. BACKGROUND

### A. The Formation of the Marital Trust

In July 2013, Hughes married Jimmy Celtyn Hughes (Jimmy). Cass and Malicoat are Jimmy's daughters from a previous marriage. In November 2013, Jimmy created the Jimmy Celtyn Hughes Revocable Trust (the Trust) and executed his Last Will and Testament. The Trust provided that, upon Jimmy's death, the balance of the Trust fund, after satisfaction of all debts, expenses, and specific gifts (the Trust Residue), was to be distributed to Hughes as the trustee of the Jimmy Celtyn Hughes QTIP Marital Trust (the Marital Trust). The Marital Trust provided that during the remainder of Hughes's lifetime, the trustee of the Marital Trust was to distribute to Hughes all of the net annual income of the Marital Trust on an annual basis. The Marital Trust also authorized the trustee of the Marital Trust to distribute to Hughes certain amounts of the Marital Trust principal for Hughes's health, education, maintenance, or support in her accustomed standard of living. Cass and Malicoat are remainder beneficiaries of the Marital Trust.

### B. Jimmy's Death and the Funding of the Marital Trust

Jimmy died in April 2018. In or around September 2018, the Marital Trust was funded with the Trust Residue, including the residence in the Trust located at

12839 Rendon Road, Burleson, Texas 76028 (the Property). In May 2020, Cass and Malicoat submitted to Hughes, as the trustee of the Marital Trust, an informal demand for accounting information related to the Marital Trust. Dissatisfied with Hughes's response, in September 2020, Cass and Malicoat requested a formal accounting from Hughes pursuant to Section 113.152 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 113.152. Cass and Malicoat were also dissatisfied with Hughes's response to their request for a formal accounting.[2]

## C. The First Lawsuit

In December 2020, Cass and Malicoat filed a lawsuit against Hughes in the 352nd District Court of Tarrant County (the First Lawsuit). In the First Lawsuit, Cass and Malicoat alleged that Hughes, as trustee of the Marital Trust, had breached her fiduciary duties owed to them as beneficiaries of the Marital Trust. Citing Section 113.082 of the Texas Property Code, Cass and Malicoat also requested that Hughes be removed as trustee of the Marital Trust and that a successor trustee be appointed in her place. *See id.* § 113.082 (providing for the removal of a trustee and the appointment of a successor trustee by a court). Cass and Malicoat also requested

---

[2]According to Cass and Malicoat, Hughes provided spreadsheets "covering only a small portion of the timeframe for which such information had been requested." Moreover, Cass and Malicoat took issue with the amount of distributions Hughes had made to herself.

4

that the trial court award them certain temporary[3] injunctive relief, including that Hughes be enjoined from, among other things, (1) "making any distributions of principal of the Marital Trust Estate to herself or any other third party"; (2) "exercising any control over the assets of the Marital Trust, other than distributions of annual net income as provided therein, for the payment of attorney's fees and expenses incurred in defending [the First Lawsuit]"; and (3) selling the Property.

## D. The *In Terrorem* Clause

On December 17, 2020, Hughes gave written notice to Cass and Malicoat that she intended to enforce an *in terrorem* clause contained in the Trust. That clause provides:

> **Effect of Attempted Contest.** In the event that any person (1) directly or indirectly contests or attacks this Trust Agreement or any trust or beneficial interest created hereunder or under the Settlor's Will, or (2) conspires with or voluntarily assists anyone associated with any such contest or attack, singly or in conjunction with any other person(s), then the Settlor specifically disinherits such person; all interests and properties given to or created for the benefit of such person, directly or in trust, under this Trust Agreement or the Settlor's Will, shall be forfeited, and such property shall be disposed as if such person had predeceased the Settlor.

The *in terrorem* clause describes certain acts that constitute a "contest" for purposes of the clause, including the following:

---

[3]In their original petition in the First Lawsuit, Cass and Malicoat prayed for "temporary and permanent injunctive relief as requested herein." However, the body of their original petition contained no mention of permanent injunctive relief.

**Direct or Indirect Contest.**  Such person unsuccessfully contests or, in any manner, attacks or seeks to impair or invalidate any provision of this Trust Agreement or the Settlor's Will on any grounds whatsoever[.]

. . . .

**Challenge of Fiduciary Appointment.**  Such person unsuccessfully challenges the appointment of any person or entity named to serve as Independent Executor of the Settlor's Will or Trustee hereunder or under the Settlor's Will[.]

The *in terrorem* clause provides that it does not apply until the trustee has given written notice to the person in violation of the clause of the trustee's intent to invoke the clause and has given that person the opportunity to voluntarily dismiss or withdraw the petition.  If that person "dismisses or withdraws such petition, contest or other claim or takes other actions requested by such fiduciary within thirty (30) business days after receipt of such notice," then the *in terrorem* clause "shall not apply with respect to such petition or contest or other claim."[4]

## E.  The First Rule 11 Agreement

On December 21, 2020, the parties entered into a Rule 11 agreement in the First Lawsuit (the First Rule 11 Agreement).  Through the First Rule 11 Agreement, the parties agreed, among other things, that (1) Hughes would not make any distributions of principal of the Marital Trust to herself or any other third party,

---

[4]In Hughes's written notice to Cass and Malicoat invoking the *in terrorem* clause, she stated that Cass and Malicoat "are being given the opportunity to voluntarily dismiss or withdraw the petition and application [for a temporary restraining order and temporary injunction] with[in] thirty (30) business days after the receipt of this notice."

unless by agreement of the parties or if leave was granted by the trial court presiding over the First Lawsuit; (2) Hughes would not exercise any future control over the assets of the Marital Trust, except (a) as was necessary to make distributions of net income in order for the Trust to continue to qualify for the marital deduction from the federal estate tax, and (b) to enter into a contract of sale and execute all closing documents as may be necessary for sale of the Property; and (3) Hughes would not remove or dispose of any personal property formerly belonging to Jimmy without first providing Cass and Malicoat an opportunity to accept or reject the personal property.

## F.  The First Amended Petition in the First Lawsuit

On February 3, 2021, Cass and Malicoat filed their first amended petition in the First Lawsuit.  Through their first amended petition, Cass and Malicoat dropped their request for injunctive relief; however, they maintained their breach of fiduciary duty claim against Hughes, as well as their request to remove Hughes as trustee of the Marital Trust and to have a successor trustee appointed in her place.

## G.  The Second Rule 11 Agreement, the Notice of Nonsuit Without Prejudice Regarding the First Lawsuit, and the Forensic Report Regarding Hughes's Spending

In June 2021, the parties attended mediation in the First Lawsuit.  Following mediation, the parties entered into a Rule 11 agreement (the Second Rule 11 Agreement) in which they agreed, among other things, that (1) Cass and Malicoat would nonsuit the First Lawsuit without prejudice, and (2) Hughes would retain a forensic accountant to conduct a forensic accounting of the Marital Trust.  That same

day, Cass and Malicoat filed a notice of nonsuit without prejudice in the First Lawsuit. In May 2022, the forensic accountant retained by Hughes provided his report to the parties. That report reflected that in the two years prior to Jimmy's death, Hughes's monthly spending was $17,901. The report further reflected that in the three years following Jimmy's death, Hughes's monthly spending was $30,317.

## H. The Second Lawsuit

In February 2023, Hughes filed the present lawsuit against Cass and Malicoat (the Second Lawsuit). In the Second Lawsuit, Hughes sought certain declarations from the trial court pursuant to the Texas Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 37. Specifically, Hughes sought declarations that Cass and Malicoat had violated the *in terrorem* clause of the Marital Trust by (1) "unsuccessfully attempting to challenge [Hughes's] appointment as trustee of the Marital Trust by seeking her removal as trustee [in the First Lawsuit]" and (2) "unsuccessfully attempting to impair [Hughes's] exercise of powers given to her under the Marital Trust by seeking injunctive relief [in the First Lawsuit] enjoining the exercise of such powers." Due to those alleged violations, Hughes also sought declarations that: (1) "all benefits provided to [Cass and Malicoat] by the Marital Trust are revoked"; (2) Cass and Malicoat "be specifically disinherited from receiving any benefit from the Marital Trust as if [they] had predeceased [Hughes]"; (3) Cass and Malicoat "immediately return all property [they] received from the Trust . . . or, alternatively, if [they have] disposed of such items, a money judgment against [them]

8

in the amount of any such disposed of property"; and (4) "it is equitable and just for [the trial court] to award to [Hughes] her reasonable and necessary attorneys' fees and costs incurred in bringing this action against [Cass and Malicoat]."

## I. The TCPA Motion to Dismiss and the Trial Court's Order Denying Same

In March 2023, Cass and Malicoat answered Hughes's lawsuit and filed a TCPA motion to dismiss.[5] In that motion, Cass and Malicoat argued that the Second Lawsuit is based on or is in response to their petition rights and that Hughes cannot establish the prima facie elements of her declaratory judgment claim against them. Accordingly, Cass and Malicoat urged the trial court to dismiss Hughes's claims in the Second Lawsuit. In response, Hughes acknowledged that "[th]e TCPA likely applies to [her] claim for a declaratory judgment," but she argued that she had established a prima facie case for each essential element of that claim.

Following a hearing on Cass and Malicoat's TCPA motion to dismiss, the trial court signed an order denying the motion.[6] This interlocutory appeal followed.

---

[5]Along with their TCPA motion to dismiss, Cass and Malicoat also filed a Rule 91a motion to dismiss. *See* Tex. R. Civ. P. 91a. The trial court later denied their Rule 91a motion to dismiss. The present appeal does not concern the trial court's denial of Cass and Malicoat's Rule 91a motion to dismiss; rather, it concerns the trial court's denial of their TCPA motion to dismiss.

[6]The same day that the trial court denied their TCPA motion to dismiss, Cass and Malicoat filed counterclaims against Hughes in the Second Lawsuit that generally mirrored the claims that they had filed against Hughes in their first amended petition in the First Lawsuit. To that end, Cass and Malicoat again alleged that Hughes had breached her fiduciary duties, and they again requested that the trial court remove

## III. DISCUSSION

In their sole issue, Cass and Malicoat argue that the trial court erred by denying their TCPA motion to dismiss.

## A. Standard of Review and Applicable Law

The TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (noting that the TCPA "protects citizens who petition . . . from retaliatory lawsuits that seek to intimidate or silence them"). The TCPA provides this protection by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review. *McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 914 (Tex. 2023) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, .008).

Parties who move for dismissal under the TCPA invoke a three-step, burden-shifting process: (1) the movants seeking dismissal must demonstrate that a legal action has been brought against them and that the action is based on or is in response to an exercise of a protected constitutional right; (2) if the movants succeed, the

Hughes as trustee of the Marital Trust and that a successor trustee be appointed in her place.

10

burden then shifts to the party bringing the legal action to avoid dismissal by establishing by clear and specific evidence a prima facie case for each essential element of the claim in question; and (3) if the nonmovant succeeds, the burden then shifts back to the movants to justify dismissal by establishing an affirmative defense or other ground on which they are entitled to judgment as a matter of law. *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *3 (Tex. App.—Fort Worth Aug. 31, 2023, no pet. h.) (mem. op.); *Hanson v. Johnson*, No. 02-23-00040-CV, 2023 WL 3643640, at *2 (Tex. App.—Fort Worth May 25, 2023, no pet.) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021). In considering whether a legal action is subject to or should be dismissed under the TCPA, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). We view the pleadings and evidence in the light most favorable to the nonmovant. *Newstream Roanoke 6.125, LLC*, 2023 WL 5615871, at *4; *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

## B. Analysis

### 1. Cass and Malicoat have established that Hughes's legal action is based on or is in response to their right to petition.

In analyzing the trial court's denial of Cass and Malicoat's TCPA motion to dismiss, we must first address whether Cass and Malicoat have established that Hughes's legal action against them is based on or is in response to an exercise of a protected constitutional right. *See Newstream Roanoke 6.125, LLC*, 2023 WL 5615871, at *3; *Hanson*, 2023 WL 3643640, at *2.

As a preliminary matter, we note that Hughes concedes that Cass and Malicoat have established that her legal action is based on or is in response to their right to petition—a protected constitutional right. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (listing the right to petition as a constitutional right safeguarded by the TCPA). In this regard, Hughes acknowledges in her brief that "[t]he Second Lawsuit is premised on [the] First Lawsuit, [and] thus the TCPA applies."[7] We agree that the Second Lawsuit is based on or is in response to Cass's and Malicoat's right to petition.

Here, in the Second Lawsuit, Hughes alleged that Cass and Malicoat had violated the *in terrorem* clause by filing the First Lawsuit. Under the TCPA, the filing of a petition in a lawsuit is a communication in or pertaining to a judicial proceeding that implicates a party's exercise of the right to petition. *Id.* § 27.001(1), (4)(A)(i).

---

[7]Elsewhere in her brief, Hughes states that "the TCPA likely applies to [the Second Lawsuit]."

12

Thus, because Hughes alleges in the Second Lawsuit that Cass and Malicoat violated the *in terrorem* clause by filing and maintaining the First Lawsuit, Cass and Malicoat have established that Hughes's legal action is based on or is in response to their right to petition. *See Marshall v. Marshall*, No. 14-18-00094-CV, 2021 WL 208459, at *4, 7 (Tex. App.—Houston [14th Dist.] Jan. 21, 2021, pet. denied) (mem. op.) (holding that appellee's allegation that appellants had violated an *in terrorem* clause by contesting a will in a different lawsuit implicated appellants' exercise of their right to petition); *see also Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (concluding that the filing of a lawsuit is an exercise of the right to petition under the TCPA).

### 2. Hughes has failed to establish by clear and specific evidence a prima facie case for each essential element of her declaratory judgment claim.

We now turn to the question of whether Hughes has established by clear and specific evidence a prima facie case for each essential element of her declaratory judgment claim. *See Newstream Roanoke 6.125, LLC*, 2023 WL 5615871, at *3; *Hanson*, 2023 WL 3643640, at *2. There are two prerequisites for a declaratory judgment claim: (1) there must be a real controversy between the parties, and (2) the controversy must be one that will actually be determined by the judicial declaration sought. *Bookout v. Shelly*, No. 02-22-00055-CV, 2022 WL 17173526, at *25 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.) (citing *Nehls v. Hartman*

*Newspapers, LP*, 522 S.W.3d 23, 29 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)).

Hughes argues that she has met these two prerequisites because she has demonstrated that the First Lawsuit violated the Trust's *in terrorem* clause.[8] Hughes argues that Cass and Malicoat have violated the *in terrorem* clause in two ways: (1) "they unsuccessfully sought to challenge the appointment of [Hughes] as the Trustee of the Marital Trust by seeking her removal as Trustee," and (2) "they unsuccessfully sought to impair [Hughes's] exercise of powers expressly granted to [her] by the trust." We will analyze these purported violations of the *in terrorem* clause in turn.

### a. Did Cass and Malicoat violate the *in terrorem* clause by unsuccessfully seeking to remove Hughes as the trustee of the Marital Trust?

An *in terrorem* clause in a trust typically makes the gifts in the instrument conditional on the beneficiary not challenging or disputing the validity of the instrument. *Di Portanova v. Monroe*, 402 S.W.3d 711, 715 (Tex. App.—Houston [1st Dist.] 2012, no pet.). *In terrorem* clauses are designed to dissuade beneficiaries from filing vexatious litigation, particularly among family members, that might thwart the grantor's intent. *Marshall*, 2021 WL 208459, at *5; *Di Portanova*, 402 S.W.3d at 715.

---

[8]Hughes also spends a significant portion of her brief arguing that the *in terrorem* clause is enforceable. But Cass and Malicoat do not dispute that the *in terrorem* clause is enforceable. Thus, we will focus our analysis on whether Hughes has demonstrated that the First Lawsuit violated the Trust's *in terrorem* clause.

14

Such clauses are "strictly construed, and courts should find a breach of the clause only when the acts of the party come within the clause's express terms." *Marshall*, 2021 WL 208459, at *5; *see Sheffield v. Scott*, 662 S.W.2d 674, 676 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) ("As a general rule[,] forfeiture provisions in a will are to be strictly construed, and forfeiture is to be avoided if possible, and only where the acts of the parties come strictly within the express terms of the punitive clause of the will may a breach thereof be declared.").

Whether an *in terrorem* clause is triggered—i.e., whether the contesting party's actions fall within the terms of the *in terrorem* clause—is a question of law. *Marshall*, 2021 WL 208459, at *5; *Estate of Cole*, No. 02-13-00417-CV, 2015 WL 392230, at *8 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.). We review questions of law de novo. *Hrdy v. Second Street Props. LLC*, 649 S.W.3d 522, 554 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 264 (Tex. App.—Dallas 2012, pet. denied).

The Texas Property Code has several provisions relating to the removal of a trustee. Pursuant to Section 113.082(a), a trustee may be removed in accordance with the terms of the trust instrument, or, on the petition of an interested person and after a hearing if a court finds: (1) the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust, (2) the trustee becomes incapacitated or insolvent, (3) the trustee fails to make an accounting that is required by law or by the terms of the trust,

or (4) the court finds other cause for removal. Tex. Prop. Code Ann. § 113.082(a). A beneficiary of a trust may treat a violation of a trust that results in the removal of a trustee as a breach of trust. *Id.* § 113.082(b). Pursuant to Section 114.008(7) of the Texas Property Code, to remedy a breach of trust, a court may "remove the trustee as provided under Section 113.082." *Id.* § 114.008(7). Moreover, *in terrorem* clauses "generally will not be construed to prevent a beneficiary from seeking to compel a fiduciary to perform the fiduciary's duties, seeking redress against a fiduciary for a breach of the fiduciary's duties, or seeking a judicial construction of a will or trust." *Id.* § 112.038(b).

Hughes essentially asks us to ignore these provisions authorizing the removal of a trustee because, according to Hughes, the following language in the *in terrorem* clause makes clear that the seeking of the removal of a trustee is grounds for violation of the *in terrorem* clause:

> **Challenge of Fiduciary Appointment.** Such person unsuccessfully challenges the appointment of any person or entity named to serve as Independent Executor of the Settlor's Will or Trustee hereunder or under the Settlor's Will[.][9]

However, we note that this provision says nothing about a challenge regarding the *removal* of a trustee; rather, it simply speaks to challenges regarding the *appointment* of a trustee. In analogous circumstances, Texas courts "have held that *in terrorem* clauses

---

[9]The Trust documents—which include the subject *in terrorem* clause—were attached to Hughes's response to the TCPA motion to dismiss.

that prohibited beneficiaries from directly or indirectly contesting or attacking 'any' provisions of wills or trusts were not violated when beneficiaries sued to remove an executor or trustee." *Marshall*, 2021 WL 208459, at *6 (first citing *Di Portanova*, 402 S.W.3d at 717–18; then citing *Conte v. Conte*, 56 S.W.3d 830, 831–32 (Tex. App.—Houston [1st Dist.] 2001, no pet.); and then citing *Estate of Newbill*, 781 S.W.2d 727, 728–29 (Tex. App.—Amarillo 1989, no writ)).

For example, in *Conte*, the subject *in terrorem* clause prohibited any beneficiary from contesting or challenging "this trust or any of its provisions," "in any manner, directly or indirectly." 56 S.W.3d at 831. The trust, however, "did not contain any provisions regarding removal of a trustee." *Id.* After a sister serving as a co-trustee filed a lawsuit to remove her brother who was also serving as a co-trustee, her brother filed a counterclaim alleging that his sister had forfeited her interest in the trust pursuant to the *in terrorem* clause. *Id.* In analyzing the issue, the First District Court of Appeals held that the *in terrorem* clause did not address the removal of a trustee, nor did it expressly prohibit anyone from seeking the removal of a trustee. *Id.* at 832. Accordingly, the court held that "the trust provisions of the Texas Property Code, not the trust, govern removal of a trustee." *Id.* The court further held that "[b]ecause the trust is silent regarding the removal of a trustee, even a beneficiary or remainderman who sought removal of a trustee would not violate the *in terrorem* clause."[10] *Id.*

---

[10]The court further noted that the brother's interpretation "would make it impossible to remove a co-trustee even for malfeasance," noting that it "s[aw] nothing

17

Here, similar to *Conte*, the Trust does not contain any provisions regarding the *removal* of a trustee. Accordingly, the trust provisions of the Texas Property Code— which authorize the removal of a trustee—govern. *See id.* Moreover, because the Trust is silent regarding the removal of a trustee, Cass and Malicoat did not violate the *in terrorem* clause by seeking Hughes's removal as trustee. *See Marshall*, 2021 WL 208459, at *6; *Di Portanova*, 402 S.W.3d at 717–18; *Conte*, 56 S.W.3d at 831–32; *Newbill*, 781 S.W.2d at 728–29; *see also Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex. App.— Fort Worth 2003, pet. denied) ("A breach of [an *in terrorem*] clause will be found only where the acts of a beneficiary or devisee clearly fall within the express terms.").

### b. Did Cass and Malicoat violate the *in terrorem* clause by unsuccessfully seeking to impair Hughes's exercise of powers expressly granted to her by the Trust?

Hughes also contends that Cass and Malicoat violated the *in terrorem* clause by unsuccessfully seeking to impair Hughes's exercise of powers expressly granted to her by the Trust when they sought injunctive relief in the First Lawsuit. But Cass and Malicoat withdrew their request for injunctive relief in the First Lawsuit when they filed their first amended petition on February 3, 2021. And the Trust explicitly provides that the *in terrorem* clause "shall not apply" if a party "dismisses or withdraws such petition, contest or other claim or takes other actions requested by such fiduciary within thirty (30) business days after receipt of" written notice of a violation of the *in*

---

in the terms of the trust to show that it was the grantors' intent to retain a co-trustee even if that trustee breached his fiduciary duties to the trust." *Conte*, 56 S.W.3d at 833.

18

*terrorem* clause and the trustee's intent to invoke the clause. This issue thus turns on whether Cass and Malicoat filed their first amended petition in the First Lawsuit within the "safe-harbor period."

Hughes contends that Cass and Malicoat's first amended petition was "[o]utside the safe-harbor period" established by the Trust. According to Hughes, the "safe-harbor period" by which Cass and Malicoat could voluntarily dismiss or withdraw their claims in the First Lawsuit ended on February 2, 2021. Cass and Malicoat, on the other hand, contend that the "safe-harbor period" ended on February 4, 2021; thus, they assert that they timely withdrew their requests for injunctive relief within the "safe-harbor period." We agree with Cass and Malicoat.

Although the term "business day" is not defined in the Trust, the Trust provides that "[t]he interpretation and operation of the trust shall be governed by the laws of the State of Texas." The term "business day" is defined in numerous Texas statutes as a day other than a Saturday, Sunday, or holiday recognized by the state. *See, e.g.*, Tex. Est. Code Ann. § 452.004(a) (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); Tex. Fam. Code Ann. § 86.0011(b) (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); Tex. Health & Safety Code Ann. § 775.0221(c) (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); Tex. Ins. Code Ann. § 542.051(1) (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); Tex. Prop. Code Ann.

19

§ 62.026(a) (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); Tex. Loc. Gov't Code Ann. § 143.034 (stating that "a Saturday, Sunday, or legal holiday is not considered a business day" for purposes of computing time period of "five business days" referenced in the statute).

The Legislature has defined both the national and state holidays that the state recognizes. *See* Tex. Gov't Code Ann. § 662.003. Pertinent to the time period at issue here—the days between the December 17, 2020 notice that Hughes gave to Cass and Malicoat of her intent to invoke the *in terrorem* clause and the February 3, 2021 filing of Cass and Malicoat's first amended petition in the First Lawsuit—Texas recognized the twenty-fourth day of December, the twenty-fifth day of December, the twenty-sixth day of December, the first day of January, the third Monday in January, and the nineteenth day of January as holidays. *Id.* Given weekends and those holidays,[11] the "safe-harbor period" for Cass and Malicoat expired on February 4, 2021. Thus, Cass and Malicoat did not violate the *in terrorem* clause by seeking injunctive relief in the First Lawsuit because they withdrew their requests for injunctive relief on February 3, 2021—within the "safe-harbor period." *See id.*

Even if Cass and Malicoat had not withdrawn their requests for injunctive relief within the "safe-harbor period," those requests would still not have violated the *in terrorem* clause. In their application for a temporary injunction in the First Lawsuit,

---

[11]December 26, 2020, was a Saturday.

Cass and Malicoat requested that Hughes be enjoined from: (1) making any distributions of principal from the Marital Trust to herself or any other third party, including without limitation, any of her children; (2) exercising any control over the assets of the Marital Trust, other than distributions of annual net income as provided therein, for the payment of attorney's fees and expenses incurred in defending this cause; (3) selling the Property; (4) removing or disposing of any personal property formerly belonging to Jimmy located at the Property without first providing same to Cass and Malicoat to accept or reject; and (5) purchasing any new property, real or personal, on behalf of the Marital Trust.

Although Hughes argues that those requests for injunctive relief impaired certain express powers given to her as trustee of the Marital Trust,[12] we note that Cass and Malicoat alleged in the First Lawsuit that Hughes had breached her fiduciary duties owed as trustee of the Marital Trust and that, unless enjoined, they would "continue to be damaged by Hughes's indiscriminate use of the Marital Trust principal." We further note that Section 112.038(b) of the Texas Property Code provides that an *in terrorem* clause "generally will not be construed to prevent a

---

[12]Hughes claims that those requests for injunctive relief impaired the following express powers granted in the Trust: (1) the power to distribute to herself as much of the principal of the Marital Trust as she may from time to time select for her health, education, maintenance, or support in her accustomed manner of living; (2) the power to be fully indemnified by the Trust against any claim or demand by any trust beneficiary or trust creditor, except for any claim or demand based on the trustee's willful misconduct or gross negligence proved by clear and convincing evidence; and (3) the power to sell property at a public or private sale.

beneficiary from seeking to compel a fiduciary to perform the fiduciary's duties, seeking redress against a fiduciary for a breach of the fiduciary's duties, or seeking a judicial construction of a will or trust." Tex. Prop. Code Ann. § 112.038(b).

More importantly, Section 114.008(a)(2) of the Texas Property Code expressly authorizes a trial court to "enjoin the trustee from committing a breach of trust" as a remedy to a breach of trust that has occurred or might occur. *Id.* § 114.008(a)(2). Thus, we conclude that Cass and Malicoat's requests for injunctive relief did not violate the *in terrorem* clause because the trial court was authorized to enjoin Hughes from committing a breach of trust. *See Id.* §§ 112.038(b), 114.008(a)(2); *see also Ahlgren v. Ahlgren*, No. 13-22-00029-CV, 2023 WL 4002849, at *18 (Tex. App.—Corpus Christi–Edinburg June 15, 2023, pet. filed) (mem. op.) (concluding that trial court was authorized by Section 114.008(a)(2) to award a permanent injunction to prevent appellants from committing further breaches of trust by dissipating trust assets); *Twyman v. Twyman*, No. 01-08-00904-CV, 2009 WL 2050979, at *5 (Tex. App.— Houston [1st Dist.] July 16, 2009, no pet.) (mem. op.) ("We conclude that the only way to preserve the status quo and prevent further harm to the Trust was to deny [the trustee] the ability to withdraw any additional funds from the Trust while the litigation is pending.").

Moreover, in order to have violated the *in terrorem* clause, Cass and Malicoat's request for injunctive relief would have needed to be "unsuccessful." But the trial court in the First Lawsuit did not rule on Cass and Malicoat's request for injunctive

22

relief, nor did it rule on the merits of the First Lawsuit. Rather, the parties entered into the First Rule 11 Agreement—whereby they agreed to certain limitations on Hughes's ability to control and make payments under the Marital Trust—and Cass and Malicoat subsequently withdrew their request for injunctive relief when they filed their first amended petition. Later, following mediation, the parties entered into the Second Rule 11 Agreement whereby they agreed that Cass and Malicoat would nonsuit the First Lawsuit without prejudice and that Hughes would retain a forensic accountant to conduct a forensic accounting of the Marital Trust.

Strictly construing the *in terrorem* clause, we hold that Cass and Malicoat did not violate the clause by unsuccessfully seeking to impair Hughes's exercise of powers expressly granted to her by the Trust. *See Doolin's Harley-Davidson, Inc. v. Young*, No. 06-05-00101-CV, 2006 WL 27983, at *4 (Tex. App.—Texarkana 2006, no pet.) (mem. op.) ("[T]he taking of a voluntary nonsuit does not constitute litigation of the issues in a case and does not prejudice the parties against seeking the same relief in a subsequent lawsuit."); *Ferguson*, 111 S.W.3d at 599 (holding that a breach of an *in terrorem* clause will be found only where the acts of a beneficiary or devisee clearly fall within the express terms of the clause); *Estate of Hamill*, 866 S.W.2d 339, 345 (Tex. App.—Amarillo 1993, no writ) (holding that the mere filing of a will contest was insufficient to invoke an *in terrorem* clause where the case was later dismissed prior to legal proceedings); *KT Bolt Mfg. Co. v. Tex. Elec. Coop., Inc.*, 837 S.W.2d 273, 275 (Tex. App.—Beaumont 1992, writ denied) ("A dismissal is in no way an adjudication of the

rights of the parties; it merely places them in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought."). We sustain Cass and Malicoat's sole issue.

## IV. CONCLUSION

Having sustained Cass and Malicoat's sole issue, we reverse the trial court's order denying their TCPA motion to dismiss, render judgment granting their TCPA motion to dismiss, and remand this case to the trial court for further proceedings consistent with this opinion and with Section 27.009(a)(1) of the Texas Civil Practice and Remedies Code.

/s/ Dana Womack

Dana Womack
Justice

Delivered: September 28, 2023

24